Joyce H. Spare, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs, June 5, 1981, to Judges MENCER, CRAIG and MACPHAIL, sitting as a panel of three.

*Roger T. Margolis,* for petitioner.

*Joel G. Cavicchia,* Associate Counsel, with him *Richard Wagner,* Chief Counsel, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE CRAIG, July 16, 1981:

Claimant,[1] in this appeal from a denial of compensation by the Unemployment Compensation Board of Review, questions the referee's conclusion that her discharge was the result of willful misconduct.[2]

Last employed as a clerk in the accounting department of Brockway Glass Company, the claimant was

---

[1] Joyce H. Spare.

[2] Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

suspended and later discharged for making a number of harassing phone calls to the plant manager, and for sending a sympathy card to his home which stated that he was being watched. The claimant admitted both to the police and to her employer that she had made the phone calls, sometimes threatening the manager with bodily harm, and other times simply hanging up.

Claimant's first argument for reversal is that the referee's findings of fact, in particular finding No. 9, are not supported by substantial evidence. That finding states: "Claimant was aware this type of incident could lead to disciplinary action."

Claimant attacks finding No. 9 on the ground that the employer had no work rule establishing disciplinary sanctions for the type of conduct in which she engaged. However, the record reveals ample evidence to support all the findings, including No. 9. Claimant's own testimony reflected her awareness of the gravity of her actions.[3]

---

[3] Part of claimant's testimony was as follows:

AC: Whether I went and did something that was very stupid and dumb and got myself into a lot of trouble, because I'm, I'm an evasive type of person. I don't like to face unpleasant things, and rather than have to face him I did that.

. . . .

QEL: Now do you recall this statement Miss Spare? You knew that what you did wasn't right, and you were willing to pay the price?

AC: I said, this is what I said to Larry when he asked me about if I did it. *I realize that people don't like to get telephone calls, you know, and not know who people are on the other end, and so I apologized to Larry.* I asked him, you know, for being a man I said, you know, I could hope he could find it in his heart to forgive me, or something to that effect, I don't really remember word for word. (Emphasis supplied.)

A requirement that the employer have a work rule establishing disciplinary standards for harassment would be superfluous. Any employer certainly may expect its employees to refrain from actions which, even outside an employment relationship, are reprehensible. Claimant's misjudgment concerning the probable punishment for her conduct does not persuade us that finding No. 9 was unwarranted by the evidence.

Claimant also contends that the employer has failed to carry his burden of showing that her conduct directly affected her work performance; she asserts that, in order to be ineligible for compensation under Section 402(e), an employee's willful misconduct must be "connected with his work."·

The claimant's own testimony established a connection between her job and the calls:

I wanted a promotion and I wanted Larry to get me a transfer out of there, but why I make the telephone calls rather than talking to him in person where we could have sat and discussed and do something stupid like hanging up it didn't make sense.

The referee's discussion succinctly articulated why the claimant's conduct constituted willful misconduct:[4]

In any employment relationship, there are certain standards of behavior which the employer has the right to expect of his employees even though they may not be expressly set forth in

_____

[4] We have defined the term "willful misconduct" to encompass a variety of situations in which an employee's actions evidence "a disregard of standards of behavior which the employer has the right to expect of his employe," or "show an intentional disregard of the employee's duties and obligations to the employer." *Sun Shipbuilding and Dry Dock Co. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 289, 310 A.2d 499 (1973).

574

the written or verbal contract. The claimant's action was a breach of duty owed to her employer and was an act so inimical to the employer's best interests that discharge was a natural result.

The employer has met the burden of establishing the claimant's ineligibility, *MacFarlane v. Unemployment Compensation Board of Review*, 12 Pa. Commonwealth Ct. 550, 317 A.2d 324 (1974), and the denial of benefits was warranted in this case.

ORDER

AND Now, July 16, 1981, the order of the Unemployment Compensation Board of Review, No. B-186237, dated July 25, 1980, is affirmed.