Erie County Geriatric Center, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs February 28, 1983, to Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*James K. McNamara, Quinn, Gent, Buseck and Leemhuis, Inc.,* for petitioner.

*Charles G. Hasson,* Acting Deputy Chief Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE ROGERS, April 13, 1983:

The Erie County Geriatric Center, a 500 bed facility providing long term care to aged and frequently indigent invalids, here seeks review of an Order of the Unemployment Compensation Board of Review by which one of the Center's nurse's aides was determined to be eligible for six weeks of unemployment compensation. The Center contends that the Board erred in failing to find that the claimant's disciplinary suspension pending discharge was caused by her willful misconduct.

The undisputed facts are that the claimant had been working as a nurse's aide for the Center for about nine years when, during the early evening of April 8, 1981, she reattached certain restraints then ordered by a physician to be in place about the wrists of a forty-seven-year-old severely ill patient. In accomplishing the restraint of the patient's hands, the claimant used a degree of force which a supervisor then present later described in a disciplinary report as a slap to the left wrist and which the claimant testified ought more properly to be called a tap to the wrist.

At a referee's hearing the claimant testified that the patient and his behavioral patterns were well known to her; that the patient's intellectual capabilities were extremely limited and best described as infantile; that he frequently managed to release himself from the required restraints; that having done so it was his practice to engage in self-destructive behavior; that such behavior frequently involved the manipulation and ingestion of his feces; that the patient had, immediately prior to the incident at issue, released his restraints and had begun to engage in what the claimant believed to be the self-destructive behavior just described; that the force used by the claimant to prevent this behavior was no more than that necessitated by the patient's considerable strength and single-minded resolve; that any abrupt motion of the claimant later described by others as a slap was simply a reflexive motion triggered by the exigencies of the circumstances; and that the claimant believed her conduct to have been justified under the circumstances and not to be categorizable as abusive.

The employer's contrary proofs were less than compelling. At the first hearing conducted on July 1, 1981, the Center's Director of Human Resources, Dennis Johnson, testified that he had no direct knowledge of the disputed incident and that he was unfamiliar with the patient involved but that he had been presented with a disciplinary report concerning the incident made by the claimant's supervisor, Patricia Krupa, which report was admitted into evidence as an exhibit over the objection of the claimant's representative. The whole of Mrs. Krupa's report is as follows:

Mrs. Baldwin [the claimant] was observed slapping Douglas Coblentz on the hand. He had gotten out of his wrist restraint. She said sharply "Don't do that," and slapped his hand. I was across the room and could hear the slap as well.

N.A. [nurse's aide] Jan Howard was in the room with me at this time.

Only the sketchiest of foundations for the introduction of the disciplinary report was laid and there is no testimony as to the mode or manner of its preparation or whether it was made at or near the time of the incident.[1] Neither Mrs. Krupa nor Jan Howard, apparently the only other person with pertinent direct knowledge, was called to testify or was asserted to be unavailable for testimony. Mr. Johnson's further testimony attempting to elaborate on and to buttress the credibility of the report served mainly to accomplish the opposite result.[2]

Following an initial determination by the referee that the Center had failed to meet its burden to show that the claimant committed willful misconduct, the Center requested and was granted an additional hearing in order

to introduce other evidence bearing on Kathern Baldwin's credibility and whatever intent she

---

[1] This foundation is required by Subsection (b) of the Uniform Business Records as Evidence Act, 42 Pa. C. S. §6108(b).

[2] See for example the following testimonial exchange:

Referee: Mr. Johnson, I am curious about one thing. In the Employer's Exhibit #1 [the disciplinary report], it says on here "on the hand"; the deposition [of Supervisor Patricia Krupa R.N.] says "on the arm"; earlier you testified from your memory that it was to the wrist.

Johnson: Yeah.

Referee: Where was the patient slapped?

Johnson: I would have to go with the arm for purposes of continuity I would have to quote Mrs. Krupa. Now Mrs. Krupa.

Referee: The arm now, we are talking about?

Johnson: For deposition purposes, I would say the arm. However, for the purposes of the misconduct form, obviously it says the hand.

Referee: Do you know which arm was involved?

Johnson: No, we don't, I don't. I am not saying that

might have had on the day in question. More particularly, the Center will offer evidence of five distinct other incidents of patient abuse by Mrs. Baldwin within 6 to 8 months of the day of her termination.

However, at the hearing subsequently conducted on November 24, 1981, the employer unaccountably produced no evidence of "other incidents of patient abuse" and, instead, sought only to have admitted into evidence over objection a deposition of Mrs. Krupa made for the purpose of a grievance arbitration proceeding then pending. Again Mrs. Krupa was not shown to be unavailable to testify and her deposition was therefore incompetent. Pa. R.C.P. No. 4020. Moreover, we have repeatedly held that evidence probative on the issue of "just cause" decided by an arbitrator is generally irrelevant to the issue of willful misconduct as defined in the unemployment compensation law. *Heffelfinger v. Unemployment Compensation Board of Review,* 60 Pa. Commonwealth Ct. 280, 431 A.2d 380 (1981); *Welsh v. Unemployment Compensation Board of Review,* 44 Pa. Commonwealth Ct. 53, 402 A.2d 1154 (1979). *See Gagliardi Unemployment Compensation Case,* 186 Pa. Superior Ct. 142, 141 A.2d 410 (1958).

On the basis of all of this evidence the referee, affirmed by the Board, found that the claimant's actions were reflexive, were not intended to harm the patient, were justified under the circumstances and, therefore, were not willful misconduct. The employer contends that this determination is against the weight of the evidence. Our scope of review in this class of case is to determine whether the referee has capriciously disregarded any evidence bearing on the point at issue which a reasonable person could not have disregarded in reaching his decision. For the reasons we have indicated, none of the employer's proofs rose to such a

level of inherent credibility as to render capricious the referee's acceptance of the claimant's testimony in her own defense.

Order affirmed.

ORDER

AND Now, this 13th day of April, 1983, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby affirmed.