510 A.2d 890

Nancy Boyle, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued April 10, 1986, before Judges CRAIG and BARRY, and Senior Judge BLATT, sitting as a panel of three.

*Norton H. Brainard, III,* for petitioner.

*Jonathan Zorach,* Associate Counsel, with him, *James K. Bradley,* Associate Counsel, and *Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, June 10, 1986:

Nancy Boyle, an eight-year employee of the American Federation of State, County and Municipal Employees (AFSCME), District Council 47, appeals an order of the Unemployment Compensation Board of Review which affirmed a referee's decision, concluding that Ms. Boyle committed willful misconduct[1] by diverting a memorandum from the top of her supervisor's desk in order to produce a copy of it at an in-

---

[1] Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. 2897, *as amended,* 43 P.S. §802(e), provides:

An employe shall be ineligible for compensation for any week—(e) in which his employment is due to his discharge or temporary suspension from work for willful misconduct with his work. . . .

vestigative hearing before the National Labor Relations Board (NLRB). We affirm.

As the District Council 47 bookkeeper, Ms. Boyle maintained the financial records of the main body of the District Council, the District Council's Health and Welfare Fund, its Legal Services Fund, and its Building Corporation. She wrote checks and maintained employee time records. By virtue of her responsibility to distribute checks and deliver mail, Ms. Boyle had access to the offices of all of the District Council's officers.

Ms. Boyle testified before the referee that the circumstances which led to her dismissal began with rumors circulating among clerical employees that the District Council was planning to designate a union to represent the District Council's clerical employees without first getting the latter's approval. Because Ms. Boyle felt unable to obtain any information from her superiors regarding the designation of a new union, she suspected that the District Council was engaged in illegal activity. On several occasions, Ms. Boyle telephoned the regional office of the NLRB, and NLRB information officers told her that she would need proof in order to establish the existence of an unfair labor practice.

Ms. Boyle stated that, one day in June, 1983, when she was alone in the office of her supervisor, District Council Secretary Joe Herkness, she saw a memorandum dated June 16, 1983, on his desk which she believed was evidence of the illegal recognition of a union by District Council 47. The memo, from the District Council president to its treasurer, stated in part:

I formally agreed to recognize SEIU Local 36 as the legal bargaining agent for Independent Clerical Employees on June 15, 1986.

Ms. Boyle made a photocopy of the memorandum. Before the referee, she explained:

It wasn't like I planned it, you saw it it was a reaction it everything fit in when I saw it I

thought this is the proof that they asked for it's not like I said I'm going to go into Joe Herkness's office and pick up a memo. . . .

In September of 1983, Ms. Boyle filed an unfair labor practice charge with the NLRB against the District Council, charging that the District Council was planning to recognize a union to represent the District Council's clerical employees through procedures which violated the National Labor Relations Act.[2] On April 4, 1984, Ms. Boyle testified before the NLRB in a different matter. At that hearing, she produced the photocopy of the memo. Officers of the District Council 47 who were present at the hearing then became aware of Ms. Boyle's possession of the memo.

Based upon that revelation, the Health and Welfare Board of the District Council, Ms. Boyle's primary employer, met on April 19 and voted unanimously to terminate her employment. District Council President Thomas Cronin informed her of the decision that afternoon.

The Board of Review made the following findings of fact in upholding the referee's denial of benefits:

Claimant's position was sensitive and one of trust. She had control over all the financial documents and wrote all checks and maintained the employe's timecards for the Council.

---

[2] Ms. Boyle explained her delay in filing the charge with the NLRB as follows:

Q. So you're saying you took the document from Joe Herkness's desk and what did you do with it?

A. I held on to it because I called the Board and the Board said that I couldn't use it unless I had proof that meeting had occurred and I didn't have proof because I wasn't invited to the meeting.

Q. Okay.

A. So I had to wait until something happened, and in September a meeting happened and that's when I filed the charges.

On April 4, 1984 claimant attended and testified at a National Labor Relations Board hearing. At this hearing, claimant admitted that she was in possession of confidential information of the employer. She admitted that she found a document on her supervisor's desk while the supervisor was not present.

Claimant made a copy of the document for her personal use as proof in a Labor Relations action and also transmitted the document to persons outside of District Council 47.

Claimant was in possession of the document without permisson or authorization from anyone in authority and did not inform her supervisor that she had taken the document. The document in question would not come into claimant's possession in the regular day-to-day performance of her duties.

Claimant was discharged due to a breach of confidentiality and conduct unbecoming an employe.

Because the employer successfully bore the burden of proving willful misconduct, *Kilpatrick v. Unemployment Compensation Board of Review*, 59 Pa. Commonwealth Ct. 201, 429 A.2d 133 (1981), we must affirm the board's findings if they are supported by substantial evidence. 2 Pa. C. S. §704.

Whether certain conduct constitutes "willful misconduct" is a question of law and therefore fully reviewable by the Commonwealth Court. *Bailey v. Unemployment Compensation Board of Review*, 72 Pa. Commonwealth Ct. 293, 457 A.2d 147 (1983). Accordingly, our inquiry is whether Ms. Boyle's breach of confidentiality constituted willful misconduct.

Because the Legislature has not statutorily defined "willful misconduct," this court has defined willful misconduct as that conduct which

must evidence (1) the wanton and willful disregard of the employer's interest, (2) the deliberate violation of rules, (3) the disregard of standards of behavior which an employer can rightfully expect from his employe, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

*Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review,* 10 Pa. Commonwealth Ct. 90, 97, 309 A.2d 165, 168-69 (1973).

Nowhere does the District Council formally detail the alleged wrongs committed by Ms. Boyle; it refers to them collectively under the broad heading of "breach of confidentiality." However, testimony by both sides supports the board's finding that the District Council did terminate Ms. Boyle's employment because of her breach of confidentiality.[3] Although the District Council

---

[3] Howard Deck, District Council 47's Corresponding Secretary testified:

Q. So [it] wasn't the question that she testified at that hearing it was how she obtained the information?

A. This is correct.

. . .

Q. Okay what is the policy of AFSCME do you have any set policy, what did she violate that's what I'm trying to find out?

A. She violated she was guilty of a breach of confidentiality.

Ms. Boyle similarly testified:

A. [Mr. Cronin] said it's come to our attention that you have given out confidential information but he didn't say I violated anything. . . .

[H]e kept talking about confidential, confidential position or something like that however he put it in that manner. . . . He said in your sensitive position that's how he put it. He didn't say I violated nothing like that.

readily admitted that it has promulgated no rules or regulations concerning the handling of documents at District Council 47, the existence of a specific rule or regulation is not crucial to the employer's case if the employee's conduct constitutes a disregard of the standards of behavior which an employer can rightfully expect from an employee. *Spare v. Unemployment Compensation Board of Review,* 60 Pa. Commonwealth Ct. 570, 423 A.2d 283 (1981).

The record indicates that Mr. Cronin informed Ms. Boyle of her dismissal, referring at least in part to a document which stated the reasons for her termination. Because that document is not a part of the record, we must rely upon the oral testimony to identify the wrongs which the District Council attributed to Ms. Boyle as a part of her alleged breach of confidentiality. Ms. Boyle testified:

> [H]e said its [sic] come to our attention that you have given out confidential information. . . . [H]e kept talking about confidential, confidential position. . . . [H]e said in your sensitive position that's how he put it. . . . Okay the words I say he repeated the hearing officer. It appears further that some of these documents would not have come into your possession in the day-to-day performance of your job as a bookkeeper.

Mr. Deck stated that Ms. Boyle's conduct would put in jeopardy the District Council's primary function of representing the members of the District Council in its capacity as a union. He stated:

> Well we have learned through hearing about her conduct from her that she was an employee that we could not trust . . . who had access to ex-

---

Q. Okay in that position that he was talking about . . . you had control over all financial documents of District Council is that right?

A. In my position there yes.

tremely sensitive and confidential information about the District Council and it was our further feeling that having learned that we could not trust her if we did not take action to remove her from the organization we would put ourselves in a position of being liable at any subsequent breach of trust occurred that would have affected our ability to represent the members of District Council.

From this testimony, we understand the District Council's construction of the term "breach of confidentiality" in regard to the acts committed by Ms. Boyle, an employee with access to the offices of the District Council's officers, to be (1) reading a document which would not come into her possession in the performance of her daily duties; (2) copying that document without the knowledge of her supervisor; and (3) the communication of that information to outside parties— here, her personal attorney and the NLRB.

Therefore, the narrow questions we now address are whether any of these actions constituted willful disregard for the standards of conduct which the District Council could rightfully expect.

### Reading

Although the District Council stated as a ground for firing Ms. Boyle that the memorandum was not one which would come into her possession in the course of her regular duties, the District Council did not allege that Ms. Boyle was in her supervisor's office without authorization on the day that she discovered the memorandum.

Where an employee has access to her supervisor's office, even though only for the purpose of picking up and delivering various items, that employee will, at times, unavoidably be able to read items which are in plain view. Because the District Council introduced no

evidence to the contrary, we can only conclude that Ms. Boyle's discovery of the June 16 memo was, quite simply, coincidental.

The board suggests that this court's decision in *Parsons v. Unemployment Board of Review*, 40 Pa. Commonwealth Ct. 378, 397 A.2d 842 (1979) controls here. In *Parsons*, the employer discharged the claimant, a corporate employee, for breaking the confidence of the president's office by entering without authorization and making copies of payroll records which were under lock and key. He then gave those copies to two directors of the corporation who did not have access to them. The president testified that the claimant had been involved in high level decisions of the corporation on a regular basis, and in that capacity, was privy to confidential information. We affirmed the board's denial of benefits, concluding that the employee, by entering the president's office without authority and obtaining secured records, did not conform to the standards of behavior which the employer had a right to expect.

Regarding Ms. Boyle's reading of the memorandum, we distinguish this case from *Parsons* where the claimant entered the president's office without authorization, specifically intending to locate records which the president kept under lock and key.

### Photocopying

We next consider whether Ms. Boyle, by photocopying the memorandum to use as proof of the District Council's unfair labor practice, willfully disregarded the standards of conduct which her employer had a right to expect. We must conclude that she did. As we have acknowledged, and as Ms. Boyle's testimony here indicates, an employee could be exposed to confidential documents solely because they were in plain view. However, Ms. Boyle's acts of diverting that document,

photocopying it and retaining the copy, were intentional and she was aware of the nature of her actions. She testified:

Q: Okay why didn't you ask your supervisor if you can have a copy made? Your supervisor know that you had done this?

A: No.

Q: Okay.

A: They would never of [sic] given me copies of it.

. . . .

Q: And you took it without him knowing it?

A: No he didn't know I took it.

Q: And you knew at the time you took it that he did not know you were taking it?

A: Yes.

Q: And you did not want him to know you were taking it.

A: I guess not.

In this case, photocopying the document is indistinguishable from taking the document itself. Further, photocopying hides the fact that the document had ever been diverted. Although no express rule forbade the photocopying of work-related documents for personal use, that action by Ms. Boyle clearly represents a willful disregard for the standards of conduct which the District Council had a right to expect. *Spare.*

The order of the Unemployment Compensation Board of Review is affirmed.

## ORDER

NOW, June 10, 1986, the order of the Unemployment Compensation Board of Review, dated August 27, 1984, decision No. B-233810 is affirmed.