578 A.2d 1360

COMMONWEALTH of Pennsylvania, PENNSYLVANIA STATE POLICE, Petitioner,

v.

COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 12, 1990.

Decided Aug. 13, 1990.

Reargument Denied September 19, 1990.

Patricia A. Conklin, Asst. Counsel, for petitioner.

James K. Bradley, Asst. Counsel, with him, Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before CRUMLISH, Jr., President Judge, PELLEGRINI, J., and SILVESTRI, Senior Judge.

## OPINION

CRUMLISH, Jr., President Judge.

The Pennsylvania State Police (State Police) appeals an Unemployment Compensation Board of Review (Board) order affirming the referee's decision to grant benefits to

Dwayne Brown.   Section 402(e) of the Unemployment Compensation Law.[1]   We affirm.

The State Police conducted a court martial and found Brown, a state trooper, guilty of "Unbecoming Conduct" and "Discrimination or Harassment" thus violating the State Police Code.[2]   The State Police Commissioner accepted the Court Martial Board's recommendation and ordered Brown dismissed.

At Brown's subsequent benefits hearing, the State Police brought no witnesses to testify, but offered the transcript and order in his court martial proceedings as evidence of Brown's conduct.   On appeal, the Board affirmed the grant of benefits.   It found credible Brown's testimony that he did not engage in any sexual harassment and concluded that "[t]he employer presented no relevant or competent evidence that the claimant committed the acts with which he was charged." [3]

The State Police maintains that the court-martial transcript was properly admitted under the Uniform Business Records as Evidence Act [4] and establishes that Brown was dismissed for improper conduct.   Thus, he is collaterally estopped from asserting he did not engage in willful misconduct.   Alternatively, the State Police argues that the Board erred because the transcript shows, as a matter of law, that Brown engaged in willful misconduct.

1.  Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

2.  State Police Court Martial Board Hearing, 12/15/88, Conclusions of Law, Nos. 2, 3.

3.  Unemployment Compensation Board of Review order, 8/8/89.

4.  Section 6108(b) of the Judicial Code, 42 Pa.C.S. § 6108(b).   This section provides:

   (b) General Rule.—A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

■ This Court has consistently held that the burden of proving willful misconduct rests with the employer. *Hager v. Unemployment Compensation Board of Review*, 86 Pa.Commonwealth Ct. 7, 482 A.2d 1368 (1984). Moreover, the issue in a willful misconduct case is not whether the employer had the right to discharge the employee for the conduct in question but whether the Commonwealth is justified in reinforcing that decision by denying benefits under the Act. *Frumento v. Unemployment Compensation Board of Review*, 466 Pa. 81, 351 A.2d 631 (1976).

■ In order to invoke the collateral estoppel doctrine, the State Police must establish that the *issue* decided in the prior adjudication is identical with the one presented in the later action. *Clark v. Troutman*, 509 Pa. 336, 502 A.2d 137 (1985). However, the issues are different here because we are only deciding whether Brown's conduct constitutes willful misconduct for purposes of denying unemployment benefits. Thus, collateral estoppel is inapplicable.

Since the transcript was admitted without objection and is the only evidence the State Police offered, we can assume the Board found it not "relevant or competent" to support a finding of willful misconduct. Although there is no law directly on point, this Court has held that evidence probative on the issue of just cause decided by an arbitrator in a grievance proceeding "is generally irrelevant to the issue of willful misconduct as defined in the unemployment compensation law." *Erie County Geriatric Center v. Unemployment Compensation Board of Review*, 73 Pa.Commonwealth Ct. 396, 400, 458 A.2d 318, 320 (1983). Thus in *Erie*, when the hospital sought to deny benefits to a nurse's aide who was suspended for allegedly slapping a geriatric patient, this Court found irrelevant the supervisor's incriminating deposition made at a grievance proceeding.

■ The State Police maintains that the court martial transcript, properly admitted as a business record, is competent evidence at the subsequent Board hearing. Section 5934 of the Judicial Code, 42 Pa.C.S. § 5934, provides such

transcripts shall be competent evidence whenever witnesses examined at those proceedings are unavailable to testify. Here, the record reveals that the State Police made no assertion that the court martial witnesses were unavailable or were even subpoenaed. *Turzai v. Unemployment Compensation Board of Review*, 102 Pa.Commonwealth Ct. 645, 519 A.2d 567 (1986).

Consequently, the Board considered the only other testimony that was offered and permissibly credited this evidence to conclude Brown did not sexually harass his co-workers. *Browning–Ferris Industries of Pennsylvania v. Unemployment Compensation Board of Review*, 111 Pa. Commonwealth Ct. 1, 532 A.2d 1266 (1987).

Accordingly, the Board's order is affirmed.

## ORDER

The Unemployment Compensation Board of Review order, No. B–275485, dated August 8, 1989, is affirmed.

SILVESTRI, Senior Judge, dissenting.

We are faced with the determination of whether the conduct of claimant which led to his being discharged from the State Police constituted willful misconduct thereby precluding him from receiving unemployment compensation. His conduct did amount to willful misconduct, hence we disagree with the majority's decision which upheld the Board's grant of unemployment benefits and respectfully file this dissent.

On December 15, 1988, claimant was brought before a court martial board of the Pennsylvania State Police. He was charged with violating the State Police Code of Conduct, specifically, FR 1–1, 1.01 which involves unbecoming conduct, and FR 1–1, 1.34 which prohibits discrimination or harassment. At the hearing, two female police officers testified to claimant's sexually harassing actions towards them. Trooper Berrian–Stafford, who had worked with

claimant previously, related the following incident to the court martial board:

> [H]e (claimant) said, Rena, why don't you let me "F" you? And I said, what, get out of here, don't be so ignorant and he said those midnighters we rode together last week, I was being a nice guy, but I'm not going to be no more Mr. Nice Guy, and, in fact, there's no one here (at the police station) but you and me, why don't you let me "F" you. He said it again ... and at that time he started getting up and said, there's nobody here but me and you, I'm going to "F" you. And then he started making comments about my rear end and what he was going to do and right at this time, he was walking towards me. So I started backing up.... And I said, Dwayne, stop being so ignorant, don't play like this. He kept laughing. I'm not playing. I'm going to "F" you and I had the radar set and I swung it at him. And he just kept coming towards me.
>
> So when I swung at him, he grabbed my arm and I went to bite him and he said, that's right, get tough, I like my bitches when they get tough. And then I grabbed him around his neck for a very short period of time, and the front door opened and he said, you are saved by the bell. You're not going to be so lucky next time. You better hope we don't ride any midnighters together and he left. (pp. 61–62 court martial transcript.)

Trooper Berrian–Stafford was asked about what "F" meant:

> Q And by "F", can you indicate Trooper Brown actually used the word, he wanted to "fuck" you several times?
> A Yes. (pp. 63–64 court martial transcript.)

Trooper O'Boyle, who had been stationed with claimant briefly related to the court martial board: "Trooper Brown put his arm around me and was running his hands across my breasts...." (p. 167 court martial transcript); "Trooper Brown entered the room and stated that he would fucking love to make love to me...." (p. 168 court martial transcript)

Claimant's sole testimony was that he knew of the regulations against sexual harassment and that he was not guilty. He did not present any reasons for why the testimony of the two female officers should not be believed. The court martial board found him guilty of both charges.[1] Following his dismissal, Brown filed for unemployment compensation. The Office of Employment Security denied benefits.

At the hearing before the referee, the employer submitted the entire transcript of the court martial proceeding into evidence. Claimant was asked, "Do you have any objections to employer exhibits one, which is the court marshall (sic) proceeding.... Do you have any objections to these documents being entered into the record?" To which he answered, "No." (p. 8 Transcript of the hearing before the referee). In addition, claimant made no objections to any statements in the court martial transcript and called no witnesses. His sole testimony regarding sexual harassment charges was as follows: "QR: When you were so employed, did you at anytime sexually harass any co-workers? AC: No." (p. 7 Transcript of the hearing before the referee.) It is hornbook law that evidence that is offered and not objected to comes into the record and must be considered by the court in reaching its decision.

Further, the Unemployment Compensation Board has established its own rules of procedure located in the Unemployment Compensation Law (Act) at 43 P.S. § 825,[2] which state in pertinent part:

> The manner in which appeals shall be taken, the reports thereon required from the department, the claimant and employers, and the conduct of hearings and appeals, shall be in accordance with rules of procedure prescribed by the board whether or not such rules conform to common law or statutory rules of evidence and other technical rules of procedure.

1. Despite the fact that he had the right to do so, claimant did not appeal the court martial board's decision.
2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937), *as amended,* 43 P.S. § 825.

However, the majority chooses to rely upon Section 5934 of the *Judicial Code*, 42 Pa.C.S. § 5934, which states that in order for transcripts from prior proceedings to be admissible, the relevant witnesses from that prior proceeding must be unavailable.  If the majority feels that § 5934 which refers to civil proceedings, supersedes 43 P.S. § 825, the court martial proceeding transcript is still admissible under Section 6108 of the *Judicial Code*, 42 Pa.C.S. § 6108, the business records exception.  Section 6108 states that a document is competent evidence if (1) the person who is in possession of the document or other qualified witness identifies it; (2) the witness testifies to how the document was prepared; (3) the document was made in the regular course of business and near the time of the event; and (4) the tribunal feels that admission is justified.  Captain Rostalski, the State Police's disciplinary officer, testified to the first three requirements.  The fact that the referee allowed the transcript to become part of the record demonstrates that he felt admission was justified.  As a result, all of the elements of § 6108 have been met, thereby making the transcript competent evidence that had to be considered and not inadmissible hearsay.

Even without § 6108, this evidence should be considered because the concerns generally associated with introduction of hearsay evidence have been mitigated due to the fact that the testimony was given under oath, claimant had a full and fair opportunity for cross-examination, and claimant had no objection to introduction of the transcript.

Claimant offered evidence in opposition to the willful misconduct charge as follows:

QR: Were you aware of the employer's rules of conduct?
AC: Yes.

.   .   .   .   .

QR: Were you discharged?
AC: Yes.

.   .   .   .   .

QR: Were you discharged for violation of code of conduct, unbecoming conduct, and sexual harassment towards co-workers?

AC: Yes.

QR: When you were so employed, did you at anytime sexually harass any co-workers?

AC: No.

(p. 7 hearing before the referee)

The Board, in affirming the referee, stated that the employer had presented *"no* relevant or competent evidence that the claimant committed the acts with which he was charged." (Emphasis supplied.) The effect of the Board's decision was a finding that claimant did not commit willful misconduct and should receive unemployment compensation.

In construing willful misconduct, we refer to Section 402(e) of the Act, 43 P.S. § 802(e) which provides, in pertinent part:

An employee shall be ineligible for compensation for any week ...

.    .    .    .    .

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work ...

While "willful misconduct" is not defined in the statute, it is well-established that it encompasses

(1) the wanton and willful disregard of the employer's interests,

(2) the deliberate violation of rules,

(3) the disregard of standards of behavior which an employer can rightfully expect from his employee, or

(4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interests or the employee's duties and obligations.

*Kentucky Fried Chicken v. Unemployment Compensation Board of Review,* 10 Pa.Commonwealth Ct. 90, 97, 309

A.2d 165, 178 (1973). *See also Apple v. Unemployment Compensation Board of Review,* 126 Pa.Commonwealth Ct. 195, 559 A.2d 87 (1989); *Boyle v. Unemployment Compensation Board of Review,* 98 Pa.Commonwealth Ct. 75, 510 A.2d 890 (1986); *Robinson v. Unemployment Compensation Board of Review,* 59 Pa.Commonwealth Ct. 226, 429 A.2d 774 (1981).

The State Police have a Code of Conduct which describes the type of behavior expected from their employees. As is relevant here, the Code prohibits employees from sexually harassing other employees. Claimant testified at the court martial hearing that he was aware of the employer's Code of Conduct and was aware that as a Pennsylvania State Trooper he was expected to conform to the Code of Conduct. The court martial board found that Trooper Brown had engaged in sexual harassment in violation of the Code of Conduct.

This court has previously held that where (1) an employer has promulgated rules that its employees are to follow, (2) the employee knows of the rule and fails to comply with it, and (3) the employee is discharged due to his or her noncompliance, the employee has committed willful misconduct and is not entitled to unemployment compensation. *Singleton v. Unemployment Compensation Board of Review,* 125 Pa.Commonwealth Ct. 397, 406, 558 A.2d 574, 579 (1989); *Gunderman v. Unemployment Compensation Board of Review,* 95 Pa.Commonwealth Ct. 479, 482, 505 A.2d 1112, 1114 (1986); *Adams v. Unemployment Compensation Board of Review,* 86 Pa.Commonwealth Ct. 238, 240, 484 A.2d 232, 234 (1984).

Once the employer has shown that a rule existed and was violated, the burden shifts to the claimant to show good cause for his actions. *Elliott v. Unemployment Compensation Board of Review,* 82 Pa.Commonwealth Ct. 107, 474 A.2d 735 (1984). Claimant offered no explanation for his actions beyond a bald denial that he had engaged in such conduct. In any event, there can never be "good cause" shown for engaging in sexual harassment.

Instead of denying claimant relief based on this settled case law, the Board found that claimant had not committed willful misconduct and was entitled to unemployment benefits. In reaching this decision, the Board did not explain why it accepted claimant's unsupported assertion of innocence rather than the extensive testimony of the two female officers whose credibility was not challenged or diminished in any way. *Borello v. Unemployment Compensation Board of Review*, 490 Pa. 607, 619, 417 A.2d 205, 211 (1980) stated that the Board "is not free to ignore the overwhelming evidence in favor of a contrary result not supported by the evidence." This is exactly what the referee and the Board did here.

The standard of review is whether constitutional rights have been violated, if there was an error in law, or if the findings of the Board are supported by substantial evidence. *Estate of McGovern v. State Employee's Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986); *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa. Commonwealth Ct. 92, 97, 525 A.2d 841, 844–845 (1987). Since no constitutional violations or errors in law are alleged, our scope of review is the substantial evidence test in Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. This is the test regardless of who has the burden of proof. *Kirkwood*, 106 Pa.Commonwealth Ct. at 97, 525 A.2d at 844. Substantial evidence has been defined as "something more than a scintilla creating a mere suspicion of the existence of fact, and must be such relevant evidence as a reasonable mind might consider adequate to support a conclusion." *Barnes v. Department of Justice*, 70 Pa.Commonwealth Ct. 47, 51, 452 A.2d 593, 595 (1982). *See also Bortz Coal Company v. Air Pollution Commission*, 2 Pa.Commonwealth Ct. 441, 456, 279 A.2d 388, 397 (1971).

The entire transcript of the court martial hearing was offered and admitted into evidence. It contained the extensive testimony of the two female officers regarding sexual harassment by the claimant. They related a number of incidents where claimant touched and solicited sexual fa-

vors. Claimant's only response to these charges, both at the court martial hearing and before the referee, was that he did not engage in this behavior. He did not give any explanation as to why the other officers would claim these incidents happened if they had not actually occurred or why they should be disbelieved. Claimant's bald denials of committing sexual harassment do not constitute substantial evidence to support the Board's decisions that he did not engage in sexual harassment and was not discharged due to willful misconduct. At most, they only provide a scintilla of evidence to support these findings. This is not sufficient to meet the substantial evidence test. As a result, the decision of the Board must be reversed.

While there may be a question of whether sexual harassment constitutes willful misconduct, *Drs. William & James Katsur & Associates v. Unemployment Compensation Board of Review*, 97 Pa.Commonwealth Ct. 332, 336–337 n. 9, 509 A.2d 926, 928 n. 9 (1986) stated that such conduct might amount to willful misconduct. The referee in that case also appeared to feel that sexual harassment would constitute willful misconduct. In addition, this Court has a history of denial of benefits to employees who were dismissed due to their inappropriate treatment of women. *Stover v. Unemployment Compensation Board of Review*, 75 Pa.Commonwealth Ct. 272, 461 A.2d 906 (1983); *Zuraw v. Commonwealth Unemployment Board of Review*, 61 Pa.Cmwlth. 548, 434 A.2d 1312 (1981); *Bender v. Unemployment Compensation Board of Review*, 58 Pa.Commonwealth Ct. 405, 427 A.2d 1264 (1981). We are not faced with deciding whether sexual harassment constitutes willful misconduct. In this case, the employer had an explicit rule against this type of behavior and the employee violated these rules. Under the facts of this case, claimant was dismissed due to willful misconduct and is not entitled to unemployment benefits.

Claimant's conduct is made even more reprehensible by the fact that he was a police officer. As was stated in *Faust v. Police Civil Service Commission of Borough of*

*State College,* 22 Pa.Commonwealth Ct. 123, 347 A.2d 765 (1975) (*quoting Cerceo v. Darby,* 3 Pa.Commonwealth Ct. 174, 183, 281 A.2d 251, 255 (1971)):

> Twentieth Century America has the right to demand for itself, and the obligation to secure for its citizens, law enforcement personnel whose conduct is above and beyond reproach. The police officer is expected to conduct himself lawfully and properly to bring honor and respect to the law which he is sworn and duty-bound to uphold. He who fails to so comport brings upon the law grave shadows of public distrust. We demand from our law enforcement officers, ..., adherence to demanding standards which are higher than those applied to many other professions. It is a standard which demands more than a forbearance from overt and indictable illegal conduct. It demands that in both an officer's private and official lives he do nothing to bring dishonor upon his noble calling and in no way contribute to a weakening of the public confidence and trust of which he is a repository.

Claimant's actions were a deliberate violation of the employer's rules. Such actions demeaned the State Police and betrayed the public's trust. As a result, he deserves the scorn of society and should not be given the slightest support, much less the benefits afforded by unemployment compensation which is society's attempt to mitigate the problems of unemployment. Society should not be expected to help one who has betrayed the values it seeks to uphold. The proper course of action in this case is to deny benefits, thereby advising claimant, and all others who would act as he did, that such conduct will not be tolerated.

While the majority's decision can be seen as a restrictive view of the issue in this case, it may have an even more pernicious result. Some may seek to interpret it as holding that sexual harassment does not constitute willful misconduct which precludes the receipt of unemployment benefits. Such a stance is intolerable in our society. As a result, and to prevent claimant from profiting from his misdeeds, I

would reverse the order of the board and deny claimant's request for unemployment compensation.