Luis Tlaseca FLORES, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Benjamin LUNA, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Gerardo Navarette LEON, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Oscar Regalado HERNANDEZ,
Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Tomas Diego AGUILAR, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Eloy Reyes ACUNA, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Alfonso ZAVALA, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Augustin Ortiz RUIZ, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Raul M. Herrera PIZANO, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Gildaro Zavala LOPEZ, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Alfonso Lopez ROMERO, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Jose M. GUZMAN–HERNANDEZ,
Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Dec. 12, 1996.

Arthur N. Read, Philadelphia, for petitioners.

Judith M. Gilroy, Assistant Counsel, Harrisburg, for respondent.

Brian F. Jackson, Harrisburg, for intervenor, Kaolin Mushroom Farms, Inc.

Before McGINLEY, KELLEY and MIRARCHI, JJ.

MIRARCHI, Senior Judge.

Claimants in these consolidated matters appeal the orders of the Unemployment Compensation Board of Review (Board) which disqualified them from receiving unemployment benefits under Section 402(e) of the Unemployment Compensation Law (Law) (willful misconduct).[1] The issues raised on appeal are: (1) whether the Board's findings of fact are supported by substantial evidence; (2) whether the Board erred in concluding that Claimants committed willful misconduct; (3) whether both the referee and the Board committed an error of law, by refusing to consider sworn prior recorded testimony; and (4) whether the referee committed an error of law and denied Claimants' due pro-

cess rights by refusing to issue requested subpoenas.

Kaolin Mushroom Farms, Inc. (Employer) operates a mushroom farm in Kennett Square, Chester County. On April 1, 1993, a number of mushroom pickers and packers initiated a work stoppage. Through the course of this stoppage, striking employees entered Employer's property to urge non-striking co-employees to join them in the labor dispute. As a result, Employer's operations were disrupted and its property was damaged. Much of this Claimants' conduct was in direct violation of the terms of a temporary restraining order (TRO). As a result of these incidents of misconduct, each Claimant was terminated. Subsequently, Claimants filed for unemployment compensation benefits.[2]

In December 1993, the Office of Employment Security (OES) determined that Claimants were not disqualified from receiving benefits under Section 402(d) of the Law.[3] On January 13, 1994, Employer appealed. After hearings were held in April 1994, the referee determined that Claimants were not disqualified from receiving benefits under § 402(d) of the Law.[4]

On May 13, 1994, the OES issued Advance Notices to Claimants that willful misconduct charges were now being considered. In June 1994, OES determined that all Claimants had engaged in willful misconduct during the course of the labor dispute, as alleged by Employer. Each Claimant appealed and hearings were scheduled.[5]

In a facsimile dated July 15, 1994, Claimants requested that the referee issue subpoe-

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

2. On April 15, 1993, Claimants also filed charges of unfair labor practices against Employer with the Pennsylvania Labor Relations Board (PLRB) and a complaint was issued.

3. 43 P.S. § 802(d). Section 402(d) provides that an employee shall be ineligible for compensation for any week "in which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lockout)."

4. In *Kaolin Mushroom Farms, Inc., v. Unemployment Compensation Board of Review*, 669 A.2d

438 (Pa.Cmwlth.1995), this Court affirmed the Board's decision that Claimants were not disqualified from benefits under Section 402(d) of the Law.

5. Luis Tlaseca Flores, Benjamin Luna, Gerardo Navarette Leon, Thomas Diego Aguilar, Eloy Reyes Acuna, Alfonso Zavala, Augustin Ortiz Ruiz, Raul M. Herrera Pizano, Gildaro Zavala Lopez, Alfonso Lopez Romero, Jose M. Guzman-Hernandez, and three non-parties of the instant appeal, were scheduled for a combined hearing on July 20, 1994. Oscar Regalado Hernandez was scheduled with four other non-parties, for a combined hearing to be held on July 25, 1994.

nas for the July 20th and 25th hearings.[6] On July 18, 1994, the referee denied the requested subpoenas and eight of the non-subpoenaed Claimants[7] failed to attend and testify *at their own hearing.* All eight were disqualified from benefits.[8]

On November 4, 1994, Claimants appealed the referee's decision.[9] Claimants argued that the referee's findings were not supported by substantial evidence, that his conclusions were erroneous, and that Claimants were denied due process based on the denial of requested subpoenas. Claimants further requested that the Board supplement the record with the PLRB testimony of Augustin Ortiz Ruiz. Gerardo Navarette Leon filed an independent motion to supplement the record with his own January 11, 1994 testimony before the PLRB.[10]

On November 23, 1994, the Board issued a memorandum to the referee directing that a hearing be held to receive testimony and evidence regarding Claimants' reasons for nonappearance at the prior hearing. The Board stated that if Claimants could establish that "proper cause" existed for non-appearance, then additional evidence and testimony on the merits would also be considered.

Pursuant to this memorandum, on December 2, 1994, the Board notified Claimants of the hearing scheduled for January 9, 1995. The remand hearing was continued and held on January 20, 1995, but none of the eight previously absent Claimants appeared and testified. The Board denied benefits and found the overpayments subject to recoupment under Section 804(b) of the Law, 43 P.S. § 865. Claimants petition for our review.[11]

## A. SUBSTANTIAL EVIDENCE ARGUMENTS

■ Each individual Claimant first contends that the Board's decision is not supported by substantial evidence.[12]

### 1. Luis Tlaseca Flores

■ On appeal, Luis Tlaseca Flores argues that there is no evidence of record to support the Board's findings that he attempted to "physically restrain" non-striking workers or that he disobeyed a directive to "stand away" from non-striking workers and "continued to harass" them. Findings of Fact, Nos. 3–5.

Before the referee, Employer presented the testimony of its manager at the Kaolin

---

6. Subpoenas to attend the July 20th hearing were requested for: Luis T. Flores, Benjamin Luna, Gerardo N. Leon, Thomas Diego Aguilar, Eloy Reyes Acuna, Alfonso Zavala, Augustin Ortiz Ruiz, Raul M. Herrera Pizano, Gildaro Zavala Lopez, Alfonso Lopez–Romero, Jose M. Guzman–Hernandez, Francisco Lopez*, Luz D. Rodriguez*, Porfirio Torres* and Heraclio Zavala Villagomez*. Subpoenas to attend the July 25th hearing were requested for: Jose L. Medina Rangel*, Juan M. Avila Lopez*, Miguel Avalos Cerrato*, Oscar Regalado, and Moises F. Flores*. (*- indicates non-parties to the instant appeal.)

7. These eight Claimants were Gerardo Navarette Leon, Thomas Diego Aguilar, Alfonso Zavala, Augustin Ortiz Ruiz, Raul M. Herrera Pizano, Gildaro Zavala Lopez, Alfonso Lopez Romero, and Jose M. Guzman–Hernandez.

8. In fact, the referee disqualified ten of the twelve Claimants from receiving benefits under § 402(e) of the Law, excepting only Benjamin Luna and Oscar Regalado Hernandez.

9. Employer appealed the determinations that allowed benefits for Benjamin Luna and Oscar Regalado Hernandez.

10. At the July 20, 1994 hearing, Carmen Maria Lopez submitted a declaration dated July 19, 1994 attesting that Gerardo Navarette Leon was out of the country (in Mexico) and therefore, unavailable for the hearing.

11. Our scope of review in an unemployment compensation appeal is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether the Board's necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

12. Findings of fact made by an administrative agency are conclusive on appeal so long as the record, viewed in its entirety, contains substantial evidence to support such findings. *Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985).

facility, Frank Wagoner (Wagoner). Wagoner testified that he saw Flores move "directly to 35 House" where people were still picking and attempt "to remove the people who were inside the house." (July 20, 1994 Hearing, N.T., p. 20.) Wagoner further stated, that Flores was "making gestures, *reaching out trying to grab the people inside the door.*" *Id.* (Emphasis Added.) Wagoner directed Flores "to stand away from the door, and to leave the premises, to leave the area." *Id.* "After five or six warnings," Wagoner "informed him that he was terminated." *Id.*

Because the testimony of Employer's witness supports the Board's findings, we find Mr. Flores' substantial evidence arguments without merit.

### 2. Benjamin Luna

■ Benjamin Luna challenges the Board's finding that he tried to climb over a supervisor to shut off lights in mushroom house.[13] However, Wagoner specifically testified, that "Mr. Luna was inside the mushroom house, taking equipment from the employees that were working at the time." (July 20, 1994 Hearing, N.T., p. 23–24.) Wagoner further stated that "Mr. Benjamin Luna tried to climb over top of me to turn the lights off," and that "you can't work in a mushroom house without the lights on." *Id.* at 21–22, 24. The Board found Wagoner's testimony credible. Accordingly, we find Mr. Luna's substantial evidence argument is also without merit.

### 3. Gerardo Navarette Leon

■ Gerardo Navarette Leon challenges the finding that he disrupted Employer's operation "by taking necessary tools from co-workers who were still working and not participating in the work-stoppage." Finding of Fact, No. 4.

When specifically questioned about the conduct of Gerardo Navarette Leon, Wagoner stated: "Mr. Navarette was in the house yelling and screaming. I saw him with a hanger, leave the back of the house with a hanger in his hand." (July 20, 1994 Hearing,

N.T., p. 24–25.) When the referee asked what a hanger was, Wagoner replied: it was "a picking utensil ... [that] hangs on the side of the bed, you stick a basket in it and you cut mushrooms in the basket. And he left with the hanger out of the back door." *Id.* at 25.

Accordingly, Mr. Leon's argument is also without merit.

### 4. Oscar Regalado Hernandez

■ Oscar Regalado Hernandez challenges the fact that he yelled and kicked Employer's fence resulting in injury to his supervisor.[14] He contends that there is no support for the portion of the Board's discussion which implicates him as being responsible for actions performed by an angry mob, without evidence that he personally engaged in any such conduct.

However, Oscar Regalado Hernandez testified that he "participated" in the protest at Employer's gate. (July 25, 1994 Hearing, N.T., p. 22). Furthermore, Hernandez does not challenge the fact that prior to his April 7th conduct, Employer had been granted a TRO "which prevented the striking employees from coming on the employer's premises." Finding of Fact, No. 4. Finally, Wagoner specifically testified that when he attempted to lock the gate, the striking workers approached and

> "Oscar Regalado Hernandez was one of the people in the forefront. They immediately rushed around the gate trying to open it ... the gate was opened and closed repeatedly ... and when it was finally begun to close, they began to kick at the gate which resulted in my fingers being bloody and bruises on my sides."

*Id.* at 16.

■ Thus, the Board properly relied on Claimant's admission that he participated in the violent injury-producing conduct at Employer's gate, in violation of the TRO. Moreover, the Board's findings can be supported by reasonable inferences drawn from Wagon-

---

13. Findings of Fact No. 4 and 5.

14. Finding of Fact, No. 7.

er's testimony.[15] Accordingly, Mr. Hernandez's substantial evidence arguments are without merit.

### 5. Thomas Diego Aguilar

■ Thomas Diego Aguilar challenges the findings that he disrupted Employer's operation "by throwing mushroom trays and mushrooms which were being harvested and/or packed" by the non-striking workers and that he was dismissed for "destroying company property and obstructing work." Findings of Fact, No. 4 and 5.

Before the referee, Mark Moran, Employer's Operations Manager, testified:

R: ... How about Agluar [sic]?

EW3: On the 1st he came into the packing room

. . . .

R: Did he act any differently than Rodriguez or Reyes–Acuna?

EW3: Very much so, very vocal, very physical.

Actually physically tried to stop people from working, throwing trays, boxes, making threats.

(July 20, 1994 Hearing, N.T., pp. 17–18.) Based on this testimony, we find that Mr. Aguilar's argument is without merit.

### 6. Employees Terminated for April 3, 1993 Misconduct

■ Eloy Reyes Acuna, Alfonso Zavala, Augustin Ortiz Ruiz, Raul M. Herrera Pizano, Gildaro Zavala Lopez, Alfonso Lopez Romero, and Jose M. Guzman–Hernandez challenge the following findings of fact collectively applied against them:

3. ... Some damage was done to Employer's product.

5. The Temporary Restraining Order ... was posted at the employer's gates prior to the morning of April 3, 1993.

7. ... went into the Employer's mushroom houses to disrupt the work going on there....

8. ... carried weapons onto the employer's property.

9. ... removed from the property by the State Police.

(Findings of Fact, Nos. 3, 5, 7–9.) Claimants aver that these facts are unsupported, and made without respect to evidence of particular individual conduct. Claimants further assert that Findings Nos. 7 and 8 are based on inadmissible hearsay.[16] Finally, Claimants assert that Finding of Fact No. 9 is "seriously misleading."[17] (Petitioner's Brief, pp. 49–51).

Our review of the record in this matter reveals: (1) that a TRO prohibiting striking employees from trespassing on Employer's property and disrupting the work of non-striking employees had been issued prior to April 3rd;[18] (2) that the Sheriff's Department had posted this TRO;[19] (3) that Employer had also posted buildings with bilingual no trespassing signs;[20] (4) that Employer had a work rule prohibiting the interference with work performed by other employees;[21] (5) that each of the Claimants "was among a group of striking employees who came on to the Employer's premises under the cover of darkness on the morning of April 3, 1993";[22] (6) that Wagoner identified each of the instant Claimants as they were removed from the house in flex cuffs by Security after "they

---

15. "The appellate court's duty is to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony." *Taylor*, 474 Pa. at 355, 378 A.2d at 831.

16. Claimants' contention in this regard is that only Mr. Harvey, Employer's witness who failed to attend the hearing, could properly attest to what occurred inside the mushroom house.

17. Because Claimants offers no legitimate argument to refute Finding of Fact, No. 9, we only

address the sufficiency of the evidence supporting it.

18. *See* Finding of Fact, No. 4; and July 20, 1994 Hearing, N.T., pp. 30, 37, 38.

19. *Id.* at 38–39.

20. *Id.* at 30, 33, 36, 37–39.

21. *Id.* at 12 and 40.

22. This first sentence of Finding of Fact, No. 7 is not contested by Claimants.

were caught in the houses, trying to stop the production"; [23] (7) that Acuna admitted his own presence and that one of his cohorts possessed a knife; [24] and (8) that the State Police removed all of these individuals. [25]

Thus, the record amply supports the respective findings that each of the above-named Claimants was among the group that had trespassed on Employer's property under the cover of darkness, in violation of the TRO and posted Employer's rules. Moreover, the record establishes, directly and by inference, that the presence and conduct of this group of weapon-bearing trespassers disrupted Employer's production that day. [26] Wagoner observed the condition of the mushroom house after various Claimants were removed by the police so that he could identify them. All of these Claimants, except Alfonso Zavala, admit that they were among this group. [27] Accordingly, the Claimants' charge that the Board's findings are unsupported by substantial evidence, is without merit.

Furthermore, while Claimants argue that Wagoner's testimony constitutes inadmissible hearsay as to what occurred inside the mushroom house, Employer correctly retorts that the fact finder may rely on unobjected-to hearsay where it is corroborated by non-hearsay evidence. *See Walker v. Unemployment Compensation Board of Review*, 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976).

In the instant case, Wagoner stated that Claimants were caught while trying to stop the production and that members of the group were carrying weapons. At the hearing, no objections were made to this very specific testimony. [28] Moreover, this testimony was corroborated by Claimant Acuna. Acuna stated that he was handcuffed by the State Police, [29] that he was not on Employer's premises to work, [30] but rather, that he was there attempting to stop the replacement workers from working [31] and that one of his "fellow workers had a knife." [32] Furthermore, Claimants fail to deny the fact that they were among the group or that Wagoner individually identified each of them inside the mushroom house, where they were flex cuffed, and where Wagoner had the opportunity to observe the damage inside. Accordingly, we find that Claimants' hearsay arguments are without merit.

### B. WILLFUL MISCONDUCT

Next, we address the claim that the Board erred by concluding that Claimants were guilty of willful misconduct, where Claimants were engaged in a work stoppage, conduct considered protected labor activity. Claimants argue that willful misconduct should only be found by the Board when the actions occurring during the course of a labor dispute are in violation of law. Claimants' Brief, p. 40. In support of this proposition,

23. *See* July 20, 1994 Hearing, N.T., pp. 28–29. No objection was made at the hearing to this *specific testimony*.

24. *Id.* at 63, 68, 70. Furthermore, after identifying Acuna as a participant of the April 3rd activities, Wagoner stated that he "was given two knives that the gentlemen used. One was taken from Jose Guzman–Hernandez, and the other one was taken from Mr. Acuna." *Id.* at 28. No objection was to this testimony at the hearing.

25. *Id.* at 37.

26. This Court is required to accord the benefit of inferences to the party in whose favor the Board has found. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977). This rule equally applies in cases of circumstantial evidence. *Zonca v. Unemployment Compensation Board of Review*, 63 Pa. Cmwlth. 260, 437 A.2d 1083 (1981).

27. Alfonso Zavala argues that there is no evidence relating him to any misconduct because he was not in the group charged with criminal trespass. This contention ignores the unassailable fact that he was still trespassing in violation of the TRO and removed by police at a later time that same morning. "We found Mr. Zavala inside the house, and he was escorted off the property." *Id.* at 36.

28. *See* Footnotes 23 and 24.

29. *See* July 20, 1994 N.T., p. 63.

30. *Id.* at 64.

31. *Id.* at 68.

32. *Id.* at 70.

Claimants posit the case of *Penflex v. Bryson*, 506 Pa. 274, 485 A.2d 359 (1984).

Initially, we must note that Claimants were dismissed for willful misconduct and not for engaging in a work stoppage or any other lawfully protected activity.[33] Secondly, although *Penflex* is factually distinguishable and inapposite, it does provide this Court with insight on the interrelationship between Sections 402(d) and 402(e) of the Law.

As the Supreme Court stated in *Penflex*, "[o]rdinarily, where a claimant is temporarily 'unemployed' *as a result of his involvement in a labor-related activity,* only Section 402(d) governs the determination as to whether he is disqualified from receiving compensation benefits." *Id.* at 287, 485 A.2d at 365 (Emphasis Added.) The Court further clarified the application of this principle by explaining that "Section 402(d) *does not immunize an employee during a work stoppage in a labor dispute from the consequences of his willful misconduct.*" *Id.* at 288, 485 A.2d at 366 (Emphasis Added.) The Court then discussed the immediate cause of disqualification.

 In the instant case, the immediate cause of each Claimant's respective ineligibility was based upon a determination of willful misconduct. Accordingly, we need only question the legal sufficiency of these determinations.[34]

 Willful misconduct has been defined as an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of a standard of behavior which the employer has the right to expect, or negligence rising to the level of an intentional disregard of the employer's interest. *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review*, 10 Pa.Cmwlth. 90,

309 A.2d 165 (1973). The employer has the burden of proving willful misconduct. *City of Beaver Falls v. Unemployment Compensation Board of Review*, 65 Pa.Cmwlth. 14, 441 A.2d 510 (1982).

Each of the Claimants in this case were found to have committed acts of trespass, violence, threats, intimidation, impermissible interference with production, and destruction or removal of Employer's private property. Based on these respective findings, the Board concluded that Employer had met the burden of proving that each Claimant was guilty of willful misconduct. Having scrutinized each factual determination individually, and after conducting a careful review of the applicable law, we conclude that each Claimant was discharged for conduct that far surpassed the boundaries of any protected labor activity and clearly rose to the level of willful misconduct, as the Board concluded.

Because Claimants have offered no legal authority for the proposition that a criminal conviction is a prerequisite for a finding of willful misconduct during a labor dispute, and because this Court has consistently held that "willful misconduct is not excused simply because it occurred while an employee is engaging in Union activities," *Williams v. Unemployment Compensation Board of Review*, 109 Pa.Cmwlth. 329, 531 A.2d 88, 89–90 (1987),[35] we hold that the Board committed no error in applying Section 402(e) of the Law and concluding that Claimants had engaged in willful misconduct.

### C. PRIOR RECORDED TESTIMONY

Claimants' third main contention on appeal, is that both the referee and the Board erred in refusing to consider the February 7, 1994 PLRB testimony of Augustin Ortiz Ruiz and the January 11, 1994 PLRB testimony of

---

33. *See* Footnote 4, supra. Furthermore, when the referee specifically asked Claimants' counsel whether he could produce evidence that the conduct at issue was protected activity, he responded in the negative. July 20, 1994 N.T., p. 79.

34. Whether the claimant's actions rose to the level of willful misconduct is a question of law fully reviewable by this Court. *Girard Giant Eagle v. Unemployment Compensation Board of Review*, 659 A.2d 60 (Pa.Cmwlth.1995).

35. "Nothing in the Act indicates that § 402(d) was intended to immunize an employee during a work stoppage in a labor dispute from the consequences of his willful misconduct connected with his work ..." *Yellow Cab Co. v. Unemployment Compensation Board of Review*, 170 Pa.Super. 625, 90 A.2d 599, 602 (1952).

Gerardo Navarette Leon. Claimants aver that because this testimony concerned the misconduct at issue in the instant case, and because Employer exercised his right to extensively cross-examine these witnesses, it was error to fail to admit the PLRB testimony into evidence.

### 1. Augustin Ortiz Ruiz

Claimants failed to offer the February 7, 1994 PLRB testimony of Augustin Ortiz Ruiz at the July 20, 1994 hearing.[36] On November 4, 1994, Claimants' first moved to supplement the record. Accordingly, we shall treat the Board's denial of this motion, as a denial of the request for a remand or rehearing.

 The Board has the discretion to decide when a remand hearing is necessary and what issues will be addressed at said hearing. *Harrison v. Unemployment Compensation Board of Review,* 73 Pa.Cmwlth. 129, 457 A.2d 238 (1983). The denial of an application for a remand will be reversed only for a clear abuse of discretion. *Dep't of Auditor General v. Unemployment Compensation Board of Review,* 86 Pa.Cmwlth. 274, 484 A.2d 829 (1984). Generally, a rehearing is granted to allow a party the opportunity to adduce evidence not offered at the original hearing because it was not then available. *Brady v. Unemployment Compensation Board of Review,* 115 Pa.Cmwlth. 221, 539 A.2d 936 (1988).

 Because Claimants have averred that Mr. Ortiz Ruiz' February 7, 1994 PLRB testimony was available for the July 1994 hearing and offer no valid reason for waiting until November 1994 to formally request its admission, we hold that the Board did not abuse its discretion in denying consideration

---

of this testimony or in allowing a rehearing to present the same.

### 2. Gerardo Navarette Leon

 Claimants argue that the refusal of both the referee and the Board to admit the prior recorded testimony of Mr. Leon is indefensible, considering the fact that he was in Mexico, at the time of the July 1994 hearing.

 Claimants' reliance upon Section 5934 of the Judicial Code (Code),[37] 42 Pa.C.S. § 5934, is misplaced insofar as administrative proceedings are not governed by technical rules of evidence. Section 505 of the Administrative Agency Law, 2 Pa.C.S. § 505. Moreover, an agency has broad discretion under this rule in admitting or rejecting evidence. *Gwinn v. Pennsylvania State Police,* 668 A.2d 611 (Pa.Cmwlth.1995).

In this case, Claimant's July 6, 1994 Notice of Hearing states: (1) "Continuances will not be granted except for proper cause *in writing.* Mail all details promptly to: ..."; (2) "You should attend the hearing to protect your rights and to present your case."; and (3) "If for any reason you cannot attend the hearing, a request for continuance (postponement) of the hearing should be communicated IMMEDIATELY to the Referee named on the front of this notice. This will be granted only for 'proper cause' and upon terms deemed proper by the Referee." Furthermore, 34 Pa.Code § 101.51 states:

> If a party notified of the date, hour and place of a hearing fails to attend a hearing *without proper cause,* the hearing may be held in his absence. In the absence of all parties, the decision may be based upon the pertinent available records. The tribu-

---

**36.** Although Claimants' July 21, 1994 closing arguments aver that a request to admit this testimony was made and refused at the hearing, the hearing record is devoid of such an initial request.

**37.** Section 5934 of the Judicial Code (Code), provides:

> Whenever any person has been examined as a witness in any civil matter before any tribunal of this Commonwealth ... if such witness ... is out of the jurisdiction so that he cannot be effectively served with a subpoena, ... and if the party, against whom notes of the testimony

of such witnesses are offered, had actual or constructive notice of the examination and an opportunity to be present and examine or cross-examine, properly proven notes of the examination of such witnesses shall be competent evidence in any civil issue which may exist at the time of his examination, or which may be afterwards formed between the same parties and involving the same subject-matter as that upon which such witness was so examined. For the purposes of contradicting a witness, the testimony given by him in another or in a former proceeding may be orally proved.

nal may take such other action as may be deemed appropriate. (Emphasis Added).

Thus, while Claimant urged application of a rule of evidence concerning witnesses at a former trial, the Board rejected this contention and applied the specific agency regulation regarding the absence of a party. In deciding proper cause for Mr. Leon's absence, the record is clear that Claimant did not uphold his duty to "immediately" request a continuance in writing before the hearing because he was unavailable. Nor did Mr. Leon request a telephonic hearing in the matter, in order to protect his rights and present his case. Instead, Mr. Leon waited until the day of the hearing, to first notify the referee of his alleged unavailability. Mr. Leon's November 4, 1994 Motion to Supplement the Record represents that he "was unavailable for testimony on July 20, 1994 because he was out of the country visiting his family."

Based on the proffered evidence, the Board determined that Mr. Leon's failure to attend the hearing was not based on proper cause, but rather was "due to his being in Mexico, and was not the fault of the unemployment compensation authorities or a third party." Board's Opinion, p. 2.

Whether or not a witness is unavailable to attend a proceeding has always been a matter of discretion for the lower tribunal. *Shields v. Larry Const. Co.*, 370 Pa. 582, 88 A.2d 764 (1952).

Thus, Claimant has failed to establish proper cause for his unavailability, despite receiving advance notice of the July 20, 1994 hearing. Because Claimant was unavailable, without proper cause, we find no abuse of discretion in the Board's denial.

Finally, we note that the Board further emphasized the difference of the proceedings before the Board and the PLRB. This Court has previously stated, that "no argument is needed to emphasize the difference between this unemployment compensation case where the worker's conduct is under scrutiny and the unfair labor charge where the employer's conduct is under judgment." *Moran v. Unemployment Compensation Board of Review*, 42 Pa.Cmwlth. 195, 400 A.2d 257 (1979).[38]

Because Claimant has neglected to establish proper cause for nonappearance, waived his opportunity to request a continuance or telephonic conference, waited until the day of trial to assert unavailability, and failed to address the exact nature and probative worth of his testimony from another proceeding, we hold that neither the referee nor the Board erred in refusing to admit Mr. Leon's PLRB testimony.

## D. REFUSAL TO ISSUE REQUESTED SUBPOENAS

Finally, Claimants contend that the referee committed an error of law in refusing to authorize issuance of the requested subpoenas and therefore, denied Claimants' rights of due process.

The Board's regulations at 34 Pa. Code § 101.31 state that "[t]he issuance of subpoenas to compel the attendance of witnesses ... *may* be obtained on application to the Board, referee, or at any local employment office." *See also*, 43 P.S. § 826.

Thus, it is clear that issuance of a subpoena is a matter of discretion. Accordingly, Claimants' assertion that issuance is mandatory is without merit.[39]

---

**38.** *See also Pennsylvania State Police v. Unemployment Compensation Board of Review*, 135 Pa. Cmwlth. 71, 578 A.2d 1360 (1990) and *Erie County Geriatric Center v. Unemployment Compensation Board of Review*, 73 Pa.Cmwlth. 396, 458 A.2d 318 (1983). (holding that evidence probative on a determination of just cause at a grievance proceeding, was irrelevant to the issue of willful misconduct under unemployment compensation law).

**39.** Claimant's assert that *Hamilton v. Unemployment Compensation Board of Review*, 110 Pa. Cmwlth. 384, 532 A.2d 535 (1987), stands for the

proposition that subpoenas must be issued. However, this case only states that, where the Board was "supplied with information that a ... witness would produce *directly contradictory evidence* ..." and was "also informed that this witness would not appear without a subpoena," that "*based upon the offer of proof*," it would be an "abuse of discretion and denial of due process to not issue the subpoena." *Id.*, 532 A.2d at 537 (Emphasis Added.) Because the record contains no such offer of proof, we can find no abuse of discretion in the original refusal of the referee and for the reasons below, hold that any alleged error was cured by the Board-ordered remand.

Furthermore, Section 504 of the Law, 43 P.S. § 824, provides that the "board shall have the power, on its own motion, or on appeal, to ... affirm, modify, or reverse the determination ... or direct the taking of additional evidence." *See also DeFelice v. Unemployment Compensation Board of Review,* 168 Pa.Cmwlth. 211, 649 A.2d 485 (1994).

■ In the instant case, the Board heard allegations that some unspecified Claimants could not get time off from their employers and remanded the matter with an order to issue subpoenas for the Claimants who did not appear at their respective hearing. However, before allowing these Claimants to provide testimony on the merits, the Board's order required a determination of whether the Claimants had "proper cause" for nonappearance at their originally scheduled hearings.[40]

Claimants argue that placing this additional burden on them to show proper cause for nonappearance, "totally negates the allocation of burdens of proof as to willful misconduct." (Petitioner's Brief, p. 35.) We disagree.

In *Ortiz v. Unemployment Compensation Board of Review,* 85 Pa.Cmwlth. 327, 481 A.2d 1383 (1984), this Court was similarly confronted with application of 34 Pa.Code §§ 101.24 (Reopening of a hearing) and 101.51 (Absence of a party).

In *Ortiz,* the issue before the referee was whether Ortiz was discharged for willful misconduct (tardiness) or in response to her filing a grievance. On the scheduled hearing date, Ortiz arrived ten minutes late. Before Ortiz had arrived, the referee dismissed her appeal of the OES determination based on her nonappearance and without a hearing on the merits. The Board affirmed, but this Court reversed and remanded.

This Court held that it was improper for a referee to dismiss an appeal from a denial of benefits based on willful misconduct, where the claimant fails to appear and where no disposition is made on the merits. *Id.,* 481 A.2d at 1386. This Court further indicated, that the proper course of action for the referee would have been to proceed with the hearing and make the requisite findings of fact based on the evidence presented by the burdened party.[41]

In *Ortiz,* we remanded to the Board for a determination of "proper cause" for nonappearance of the claimant, by relying on the same regulation cited by the Board in the instant case.[42] In the instant case, the Board ordered a remand hearing to determine whether "proper cause" existed for Claimants nonappearance. This order was consistent with 34 Pa.Code § 101.51 as applied by this Court in *Ortiz.* However, unlike the referee in *Ortiz* the referee in this case initially heard the merits, made findings of fact and concluded that Employer had met its burden of establishing willful misconduct.

■ Therefore, we hold that Claimants failed to make the requisite offer of proof establishing entitlement to the initial issuance of subpoenas. Moreover, assuming arguendo that the referee erred in denying these subpoenas originally, we hold that any error was cured by subsequent issuance. Because none of the Claimants appeared at the second hearing, to avail themselves of this second opportunity to be heard, they cannot legitimately claim to have been prejudiced by a lack of due process. Finally, as *Ortiz* illustrates, a proper cause inquiry for nonappearance does not impermissibly reallocate the burden of proof in a willful misconduct setting. For all of the foregoing rea-

---

40. *See* Board regulation at 34 Pa.Code § 101.51.

41. The Court opined that a burdened party could not prevail where there was no record to support findings of fact underlying a determination.

42. Just as Claimants here, Ortiz had to establish proper cause as a prerequisite to presenting evidence on the merits of her appeal. If the Board determined that Ortiz was without proper cause

for her nonappearance, then the Board was ordered to "issue a decision on the merits with findings of fact based upon the record before the referee including any testimony that the employer may wish to offer in support of its burden of proof and, additionally, attach to the record its reasons why proper cause was not found in claimant's case." *Ortiz* 481 A.2d at 1386.

sons we find Claimants' last contention is without merit. Accordingly, the orders of the Board are affirmed.

### ORDER

AND NOW, this 12th day of December, 1996, the orders of the Unemployment Compensation Board of Review in the above-captioned matters are hereby affirmed.