IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jory Scruggs,                          :
                                       :
                        Petitioner     :
                                       :
            v.                         : No. 624 C.D. 2018
                                       : Submitted: September 7, 2018
Unemployment Compensation              :
Board of Review,                       :
                                       :
                        Respondent     :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  December 13, 2018


            Jory Scruggs (Claimant) petitions for review of the March 8, 2018
order of the Unemployment Compensation Board of Review (Board) that affirmed
a referee's determination and held that Claimant was ineligible for benefits under
Section 402(e) of the Unemployment Compensation Law (Law).[1]  We affirm.

            Claimant worked full-time as a material coordinator for Hatfield
Quality Meats Incorporated (Employer) from March 7, 2016, until June 6, 2017,

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).  Section 402(e) provides that an employee shall be ineligible for compensation for any week in which his unemployment is due to his discharge from work for willful misconduct connected to his work.

when he was discharged for failing to follow supervisory instructions. Finding of Fact (F.F.) Nos. 1, 4-5. The local service center determined that Claimant had committed willful misconduct and was ineligible for benefits under Section 402(e) of the Law. Claimant appealed.

A referee held a hearing on October 16, 2017. Claimant did not appear. Employer presented testimony from its human resources coordinator, Pedro Soto (Soto). Soto testified that Claimant was discharged on June 6, 2017, for failing to follow instructions from his team lead to clean condensation. Notes of Testimony (N.T.), October 16, 2017, N.T. at 2. Soto explained that Claimant was ordered more than three times to clean condensation, and he ignored this supervisory instruction because he was engaged in conversation with a coworker.[2] F.F. No. 4.

Soto stated that Claimant's actions violated Employer's policy, which listed "insubordinat[ion]" and "refusal to follow supervisory instructions" as grounds for termination.[3] N.T. at 3. Soto testified that Claimant was aware of this

---

[2] Soto further noted:

> [Claimant] was asked multiple times by the Team Lead and he just was like, 'I'm talking'. He was talking to [a coworker] and basically he was disregarding that order.

N.T. at 3.

[3] The relevant provision of Employer's policy states:

> 21.10 PROHIBITED ACTIONS. The following acts of willful misconduct are prohibited and may result in immediate disciplinary action up to and including termination. These types of acts may include but are not limited to:
>
> ***

**(Footnote continued on next page…)**

policy and had signed an acknowledgment form during his orientation, confirming his receipt of the employee handbook, which included all of Employer's policies.[4] N.T. at 3. Additionally, Soto noted that Claimant's disregard of an order to clean condensation was "very serious" and could "lead to further contamination if [the condensation] starts to leak into the product." N.T. at 3.

By decision mailed October 17, 2017, the referee found that Claimant was duly notified of the date, time and place of the hearing but failed to appear.[5] The referee determined that Employer had a policy that prohibited insubordination and considered one incident of refusing instructions from a team lead to be grounds for termination. F.F. No. 2. The referee also found that Claimant was or should have been aware of the existence of the policy and had repeatedly disregarded instructions from his team lead. F.F. Nos. 3, 4. The referee concluded that

---

**(continued…)**

- Insubordinate conduct or refusal to follow supervisory instructions

Certified Record (C.R.) Item No. 11, Appendix 2, Excerpt of Employer's Policy.

[4] Claimant's signed acknowledgment in part provides:

> I acknowledge that I have received a copy of the Company's Team Member Handbook. I agree, as a condition of my employment with the Company, to abide by these policies and rules.

C.R. Item No. 11, Appendix 3, Acknowledgment Form of Company's Team Member Handbook.

[5] A notice of hearing mailed to Claimant on October 3, 2017, provided notice of the time, the location, and the instruction for Claimant to arrive 15 minutes before the hearing's scheduled start time of 11:45 a.m. C.R. Item No. 9, Notice of Hearing. We note that Section 101.51 of the Board's regulations in relevant part states that "[i]f a party notified of the date, hour and place of a hearing fails to attend a hearing without proper cause, the hearing may be held in his absence." 34 Pa. Code §101.51.

Employer satisfied its burden to show that Claimant's actions constituted willful misconduct and affirmed the local service center's determination that Claimant was ineligible for benefits under Section 402(e) of the Law.

Claimant appealed to the Board, asserting that he arrived late to the hearing due to public transportation delays and that he had not committed willful misconduct. Claimant maintained that he was ordered only once to clean condensation, not multiple times. He also argued that he was instructed by a "team lead," not by a "supervisor" so that Employer's policy did not apply.

The Board remanded the matter to a referee to act as a hearing officer for the Board and conduct a second hearing regarding Claimant's nonappearance at the first hearing. The referee also was to receive additional testimony from both parties regarding the merits.

Claimant appeared at the January 26, 2018 remand hearing. Employer was not present. The referee addressed Claimant's nonappearance at the initial hearing, informing Claimant that the hearing had been delayed nearly 20 minutes on October 16 awaiting his arrival. Notes of Testimony (N.T.) January 26, 2018, at 3. The referee stated that in the half-hour before the hearing's scheduled start time at 11:45 a.m., Claimant contacted the referee's office twice (*i.e.*, 11:23 a.m. and 11:41 a.m.) to provide notice that he was on his way but running late due to public transportation delays. N.T. at 3. The referee noted that when Claimant last called the referee's office at 11:41 a.m., four minutes before the hearing's expected start time, he was located one hour away from the hearing location, still awaiting public transportation. N.T. at 3, 4.

In response, Claimant stated that "[he] was still trying to figure out how to get here," when he last phoned the referee's office at 11:41 a.m. the

morning of October 16. N.T. at 4. Claimant testified that October 16 "was a bad day for [him]" and that he was late[6] to the initial hearing because of personal problems and "timing" issues with public transportation. *Id.* Claimant stated that if he had his own transportation, he would have arrived on time, "[m]atter of fact, early, like, that's how I arrive to work." *Id.*

On the merits, Claimant explained that as a material coordinator, he was trained to first ensure that all product was accounted for and next, to check for condensation. N.T. at 6. Claimant admitted that at the time he was informed of the condensation problem,[7] he was sidetracked and distracted, but he stated that he

---

[6] Claimant maintained that "he *did* show [up] to the hearing[,]" but that he arrived late "because the bus wasn't on time." C.R. Item No. 13, Appendix 2, Claimant's Petition for Appeal (emphasis added). *See also* Claimant's testimony that he arrived around "12:30-ish." Notes of Testimony (N.T.) January 26, 2018, at 3. The referee stated that Claimant eventually showed up, "maybe much later, after the Hearing was over." N.T. at 4.

[7] Both Soto and Claimant present conflicting testimony regarding who gave Claimant the order to clean condensation which he allegedly disregarded. At the initial October 16, 2017 hearing, Soto stated:

> [] [Claimant] refused to follow Supervisor instructions or Team Leader, I should say.
> ***
> [] [Claimant] was basically let go because he refused to follow instructions from the Supervisor and the Team Leader and the QA Technician . . . .

Notes of Testimony (N.T.), October 16, 2017, at 2, 3.

Alternatively, at the January 26, 2018 hearing, Claimant testified:

> . . . they came, well, the USDA, it's Q&A, Q&A [sic] into the room, and noticed that there was condensation in the room.
> ***
> C: The Supervisor wasn't on the floor.
> R: Okay. So who drew your attention to the condensation?

**(Footnote continued on next page…)**

5

was following training protocol to address condensation only after first examining all of the product. N.T. at 6. Claimant also explained that when he was notified of the condensation, he assumed that the issue was being handled by another employee because he was busy operating a moving machine at the time. N.T. at 7, 8. Claimant added that he intended to address the condensation problem later, after he had tended to the product. N.T. at 7.

Claimant was uncertain whether or not the condensation issue required immediate attention but understood the condensation to be "nowhere near the product." N.T. at 6. Claimant denied that he ever ignored instructions or had been insubordinate and maintained that he had completed all of his job duties. N.T. at 7, 8.

After reviewing the remand hearing transcript, the Board affirmed the referee's decision by March 8, 2018 order. The Board did not find Claimant's

---

**(continued…)**

> C: The Team Lead.
> R: So the Team Lead –
> C: No, Q&A.
> ***
> R: So it's not like you ignored your Super – your instructions from
> the – from the Q&A?
> C: Yeah. I never ignored.

N.T. at 6, 7.

Claimant contends that a distinction between a "team lead" and a "supervisor" exists and interprets Employer's policy to only prohibit insubordination of a "supervisor." However, there is no explanation of how such titles may be distinguished, no discussion in either Soto's or Claimant's testimonies of whether a "Q&A" or "QA" may be used interchangeably with a "team lead," and no clear statement presented by either Soto or Claimant as to who specifically instructed Claimant to clean condensation on the day of his firing.

testimony that he was late to the hearing because of public transportation delays to be credible. The Board emphasized that minutes before the hearing's scheduled start time, Claimant was one hour away and "still trying to figure out" how to get to the hearing location. The Board also did not credit Claimant's testimony that he missed the hearing due to personal problems, noting that Claimant had not provided any testimony or evidence to identify what personal problems he was having. The Board concluded that Claimant had not demonstrated proper cause for missing the initial hearing, and accordingly, did not consider Claimant's additional testimony concerning the merits. *Ortiz v. Unemployment Compensation Board of Review*, 481 A.2d 1383, 1384 (Pa. Cmwlth. 1984). Claimant appeals to this Court.[8]

Initially we note that on appeal Claimant does not challenge the Board's conclusion that he did not have proper cause for failing to appear at the first referee's hearing. Consequently, this issue is waived.[9]

---

[8] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Kirkwood v. Unemployment Compensation Board of Review,* 525 A.2d 841, 843-44 (Pa. Cmwlth. 1987).

[9] In the summary of argument section of Claimant's brief, he addresses the issue of his nonappearance at the initial hearing by noting that he had called the referee's office before the initial hearing to provide notice that he would be late; he still arrived to the initial hearing despite his tardiness; and his testimony was never heard at the initial hearing or at the remand hearing even though Claimant arrived on time at the remand hearing and Employer had not shown up at all. However, Claimant does not raise the issue of his nonappearance in either his statement of questions presented or in the argument section of his brief.

Rule 2116(a) of the Pennsylvania Rules of Appellate Procedure (Pa. R.A.P.) states that issues not raised in the statement of questions involved will not be considered on appeal. Pa. R.A.P. 2116(a). Rule 2119 requires the arguments presented by parties to be developed with **(Footnote continued on next page…)**

Claimant argues that he was not discharged for willful misconduct because Employer's rule only applies to instructions from supervisors, and Claimant received the order to clean condensation from a team lead, not a supervisor. Claimant argues that he did not follow his team lead's order at the time because he was already engaged in a task. Claimant contends that he is a hardworking employee and that just recently, he was awarded a raise at work.

The question of whether a claimant's actions constitute willful misconduct under Section 402(e) of the Law is a question of law properly reviewable by this Court. *Savage v. Unemployment Compensation Board of Review*, 491 A.2d 947, 949 (Pa. Cmwlth. 1985). Although not defined in the Law, our courts have described willful misconduct as: (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or the employee's duties and obligations. *Scott v.*

---

**(continued…)**

analysis of pertinent authority and supported by discussion. Pa. R.A.P. 2119. By failing to comply with Rules 2116(a) and 2119, Claimant has waived this issue on appeal.

Moreover, even if Claimant had not waived this argument, it would still be meritless because the Board did not credit Claimant's testimony that he was late to the hearing due to public transportation issues. On appeal, we will not disturb the Board's credibility determinations or reweigh the evidence presented. *Lehigh County Vo-Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 652 A.2d 797, 800 (Pa. 1995). We have long held that the Board is the ultimate fact-finder in unemployment compensation proceedings and is empowered to resolve all conflicts in the evidence, witness credibility, and the weight accorded to the evidence. *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). As long as such findings are supported by substantial evidence, they are conclusive and binding on appeal. *Id*.

*Unemployment Compensation Board of Review*, 105 A.3d 839, 844 (Pa. Cmwlth. 2014). An employer bears the burden of proving willful misconduct in order to disqualify a claimant from receiving unemployment compensation benefits. *Kelly v. Unemployment Compensation Board of Review*, 747 A.2d 436, 438 (Pa. Cmwlth. 2000). Violation of an employer's work rule may constitute willful misconduct under Section 402(e) of the Law. *Chapman v. Unemployment Compensation Board of Review*, 20 A.2d 603, 607 (Pa. Cmwlth. 2011). An employer asserting violation of a work rule as willful misconduct must establish the existence of the work rule, its reasonableness, and the employee's awareness of the rule. *Bishop Carrol High School v. Unemployment Compensation Board of Review*, 557 A.2d 1141, 1143 (Pa. Cmwlth. 1989). Once an employer satisfies its burden of proof, the burden shifts to the claimant to prove that the rule was unreasonable or that claimant had good cause to justify his behavior. *Simpson v. Unemployment Compensation Board of Review*, 450 A.2d 305, 308 (Pa. Cmwlth. 1982).

Because the Board determined that Claimant did not establish proper cause for missing the initial hearing, it did not review Claimant's testimony regarding the merits of his appeal. *Flores v. Unemployment Compensation Board of Review*, 686 A.2d 66, 77 (Pa. Cmwlth. 1996). Thus, we review the record to determine whether Employer's evidence constitutes substantial evidence to support the Board's findings and conclusion that Claimant's actions constituted willful misconduct.[10] Employer presented credible evidence to establish that Employer

---

[10] In *Ortiz* we stated:

> If proper cause is found, then the Board must order a remand and schedule a hearing so that both parties can present evidence on the

**(Footnote continued on next page…)**

had a known, reasonable work rule and that Claimant was discharged for violating it.  Upon careful review of the record, we find that substantial evidence exists for the Board's findings that Claimant's actions violated Employer's work rule, which in turn support the Board's denial of benefits under Section 402(e) of the Law.

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

_____
**(continued…)**

> merits of [c]laimant's appeal.  If the Board determines, however, that [c]laimant did not have proper cause for failing to attend the referee's hearing, then it must issue a decision on the merits with findings of fact based upon the record before the referee including any testimony that the employer may wish to offer in support of its burden of proof and, additionally, attach to the record its reasons why proper cause was not found in the claimant's case.

481 A.2d at 1386.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jory Scruggs,                                    :
                                                 :
                        Petitioner               :
                                                 :
            v.                                   :  No. 624 C.D. 2018
                                                 :
Unemployment Compensation                        :
Board of Review,                                 :
                                                 :
                        Respondent :

# O R D E R

AND NOW, this 13<u>th</u> day of <u>December</u>, 2018, the order of the Unemployment Compensation Board of Review, dated March 8, 2018, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge