IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Abubakarr Nabay,                              :
                          Petitioner         :
                                             :
        v.                                   :  No.  881 C.D. 2020
                                             :  Submitted:  October 22, 2021
Unemployment Compensation                    :
Board of Review,                             :
                          Respondent         :


BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                        FILED:  December 30, 2021


        Abubakarr Nabay (Claimant) petitions for review of the August 12, 2020 order of the Unemployment Compensation (UC) Board of Review (Board), which affirmed a referee's decision finding Claimant ineligible for UC benefits under Section 402(e) of the UC Law (Law).[1]  On appeal, Claimant argues that the Board erred by concluding that The Jaydor Company (Employer) met its burden of proving that Claimant's unemployment was due to willful misconduct.  For the following reasons, we affirm.

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (providing that an employee shall be ineligible for compensation when his separation from employment is due to willful misconduct connected with his work).

## I. Background

Claimant worked full-time as a residential garage door installer for Employer from November 7, 2016, until January 10, 2020, at a rate of pay of $25.00 per hour. Certified Record (C.R.), Item No. 13; Referee's 5/7/2020 Decision, Finding of Fact (F.F.) No. 1. On January 10, 2020, Claimant was assigned the task of installing two garage doors at Employer's client's location, which he failed to complete. F.F. Nos. 2-3. Claimant then left the job site and returned home, where he remained for 1 hour and 20 minutes. F.F. No. 4. Prior to leaving the job site, Claimant did not contact Employer to let Employer know that he was leaving the site or that the installation could not be completed. F.F. No. 5. Claimant then returned to Employer around noon and clocked out for the day without Employer's permission. F.F. Nos. 6-7. On January 14, 2020, Employer terminated Claimant for failing to perform his job duties on January 10, 2020, and for leaving early that day. F.F. No. 8.

Claimant applied for UC benefits. UC authorities requested information from both Claimant and Employer regarding Claimant's discharge. Based upon this information, the local service center determined that Claimant was discharged for willful misconduct and that Claimant did not show good cause for his actions. Claimant was therefore determined to be ineligible for UC benefits under Section 402(e) of the Law, 43 P.S. § 802(e) (relating to willful misconduct). C.R., Item No. 7.

Claimant appealed, and the Board thereafter mailed the parties a notice indicating that a hearing would be held on March 26, 2020. The hearing was continued to May 1, 2020, presumably due to the onset of the COVID-19 pandemic,

and was held via telephone on that date. Claimant testified on his own behalf, and two witnesses (Michael Castagno and Joshua Cifelli) testified for Employer.

Claimant testified, in relevant part, as follows. He went to the job scheduled for that date, and that, before he arrived, he called the client at or around 9:26 a.m., and the client told Claimant he was not ready to have the garage doors installed that day. C.R., Item No. 12, Referee's Hearing, 5/1/2020, Notes of Testimony (N.T.) at 14. Despite the client's statement that he was not ready for the install, Claimant went to the job site and then tried to call Employer (Mr. Cifelli), but nobody answered; Claimant did not leave a voicemail. *Id.* at 15. Claimant then called the Warehouse Manager, who encouraged Claimant to call Employer again. *Id.* at 16. Claimant testified that he tried to call Employer (Mr. Cifelli) again but again got no answer, so he decided to leave the job. *Id.* Claimant then testified that he never went home but also, in contradiction, said that he went to his home but claims to have merely sat in his truck outside his home to wait for Employer's response. *Id.* at 16-18. Claimant testified that he then spoke to Employer (Mr. Cifelli) at or around 10:45 a.m., and Employer told him to go to the shop. *Id.* at 17. Claimant then testified that he saw Employer (Mr. Cifelli) at the shop, and that Employer told him to clock out at or around 11:00 a.m. *Id.* Claimant then testified that Employer (Mr. Cifelli) called him on January 14, 2020, to tell Claimant he was being terminated because Employer was "losing money." *Id.* at 13, 18. Claimant further testified that he had exchanged approximately seven text messages with Employer (Mr. Cifelli) on January 10, 2020, but he did not submit them into evidence. *Id.* at 18-20.

Mr. Castagno, an accounting and human resources employee with Employer, testified first on Employer's behalf, in relevant part, as follows. Claimant

3

began working for Employer on November 7, 2016, and his last day at work was January 10, 2020. N.T. at 6. Mr. Castagno testified that Mr. Cifelli terminated Claimant after learning that Claimant did not perform the client's garage door installation assigned to him for January 10, 2020, and clocked out sometime around noon without permission. *Id.* at 6-7. Employer learned of Claimant's nonperformance on the following Monday when the client called Mr. Cifelli angry about the garage door installation not being completed. *Id.* at 7. Mr. Castagno then testified that he did not play a role in the decision to terminate Claimant. *Id.*

Mr. Cifelli, Employer's manager, testified next on Employer's behalf, in relevant part, as follows. According to Mr. Cifelli, he and Nicky Cifelli met with Claimant for a face-to-face meeting on January 13, 2020, during which they terminated Claimant.[2] N.T. at 8. Mr. Cifelli testified that there were many issues with Claimant's work performance, but that he informed Claimant that the incident that occurred on January 10, 2020, was the main reason for the termination. *Id.* at 8-9. Mr. Cifelli testified that he received a call from the client who was irate that the garage doors were not installed on January 10, 2020. *Id.* at 9. Mr. Cifelli stated that he had no idea the installation was not performed on January 10, 2020, until the client called him the following Monday. *Id.* Mr. Cifelli also testified that the garage door installers are "instructed to not leave the jobsite until talking with [him] . . . ." *Id.* at 10. Additionally, Mr. Cifelli testified that all of Employer's trucks are equipped with global positioning systems (GPS), which was how he knew that Claimant went home for 1 hour and 20 minutes before returning to work and clocking out around noon. *Id.* at 8-9, 11.

---

[2] Claimant testified that his termination date was January 14, 2020, not January 13, 2020. N.T. at 70.

Following the hearing, the referee issued a decision on May 7, 2020, affirming the local service center's determination and denying Claimant UC benefits under Section 402(e) of the Law. In doing so, the referee made the following findings of fact:

> 1. [] [C]laimant worked full time as a garage door installer from November 7, 2016, until January 10, 2020, at a rate of pay of about $25.00 per hour.
>
> 2. On January 10, 2020, [] [C]laimant was assigned the task of installing two garage doors at [] [E]mployer's client's location.
>
> 3. [] [C]laimant arrived at the location, but he did not perform the installation.
>
> 4. [] [C]laimant left the job site and returned to his home, where he remained for 1 hour and 20 minutes.
>
> 5. Prior to leaving the job site, [] [C]laimant did not contact [] [E]mployer to let [] [E]mployer know that he was leaving the site or that the installation could not be completed.
>
> 6. [] [C]laimant returned to [] [E]mployer around noon and clocked out.
>
> 7. [] [C]laimant was not given permission to clock out early that day.
>
> 8. On January 14, 2020, [] [E]mployer terminated [] [C]laimant for failing to perform his job duties on January 10, 2020, and leaving early for the day.

C.R., Item No. 13, Referee's 5/7/2020 Decision, F.F. Nos. 1-8. The referee resolved the conflicts in the testimony in favor of Employer, and found that Employer's witnesses credibly testified to the following:

> [C]laimant was assigned to perform a job on January 10, 2020, but he failed to do so. [] [E]mployer's witness testified that [] [C]laimant left the site without contacting [] [E]mployer to explain why the work was not completed. [] [E]mployer's witness further testified that after []

5

> [C]laimant left the worksite, he returned to his home for an hour and 20 minutes. [] [E]mployer's witness was able to track [] [C]laimant's location by using GPS located in the work vehicle. Finally, [] [E]mployer's witness testified that [] [C]laimant returned to [] [E]mployer around noon and clocked out for the day, even though there was work available.

*Id.* at 2. The referee also noted that, despite being asked repeatedly why Claimant did not submit into evidence the alleged text messages from Employer, Claimant was unable to provide an explanation to this question. *Id.* Accordingly, the referee concluded that Claimant was ineligible for benefits under Section 402(e) of the Law because he was discharged for willful misconduct. *Id.*

Claimant appealed to the Board, alleging that Employer lied during the telephone hearing, and included what appears to be a log of calls and/or text messages in an Excel spreadsheet. C.R., Item Nos. 14-15. Claimant also requested a remand hearing based on this evidence, which the Board denied, and permission to file a brief, which the Board granted. C.R., Item Nos. 16-18.

In a decision mailed on August 12, 2020, the Board determined that the referee's decision was proper under the Law, and it adopted and incorporated the referee's findings of fact and conclusions of law as its own. The Board also made two additional findings of fact, including that Employer had a work rule that required employees to call their supervisor prior to leaving a worksite without completing an installation and that Claimant was aware of the rule. C.R., Item No. 19. The Board credited Employer's testimony that Claimant failed to adhere to that rule. The Board therefore affirmed the referee's decision denying Claimant benefits under Section 402(e) of the Law. Claimant then petitioned this Court for review of the Board's order.

6

## II. Discussion

On appeal,[3] Claimant argues that the Board erred in concluding that he committed willful misconduct. Claimant first argues that the Board's findings of fact and conclusions of law are not supported by substantial evidence. Claimant's Br. at 9-10. Citing *Walker v. Unemployment Compensation Board of Review*, 367 A.2d 366 (Pa. Cmwlth. 1976), Claimant contends that in finding that Claimant failed to complete the assigned job on January 10, 2020 (F.F. No. 3), and returned to his home for 1 hour and 20 minutes (F.F. No. 4), the referee and the Board relied upon inadmissible uncorroborated hearsay, *i.e.*, Employer's testimony as to those alleged facts. Claimant's Br. at 9-10. Claimant also alleges that no foundation was laid to establish the reliability of the GPS system used by Employer to track Claimant's whereabouts, about which Employer's witnesses testified at the hearing, and, as such, this evidence also constitutes uncorroborated hearsay that cannot support the Board's findings. *Id.* at 10. Claimant also appears to challenge the Board's finding (F.F. No. 8) that Claimant was terminated based on the January 10, 2020 incident. *Id.* at 10-11. Claimant next argues that he was not afforded a full and fair hearing due to the hearing being held telephonically and the referee's inability to observe witnesses and make fair credibility assessments. *Id.* at 11-12. Claimant further asserts that the referee did not assist him in presenting his evidence, *i.e.*, the text messages, and in making any objections. *Id.* at 12. Finally, Claimant asserts that the Board abused its discretion in denying his request for a remand hearing when

---

[3] "Our review is limited to determining whether the necessary findings of fact were supported by substantial evidence, whether errors of law were committed, or whether constitutional rights were violated." *Johns v. Unemployment Comp. Bd. of Rev.*, 87 A.3d 1006, 1009 n.2 (Pa. Cmwlth. 2014).

7

Claimant offered new evidence to show his contacts with Employer on January 10, 2020. *Id.* at 13.

The Board responds that, while Claimant argues that Employer's witnesses' testimony was not supported by substantial evidence because it was based on uncorroborated hearsay evidence, the Board is the ultimate factfinder in UC cases, is empowered to make credibility and evidentiary weight determinations, and is free to reject the testimony of any witness in making such determinations. Moreover, this Court is bound by the Board's findings because Employer's witnesses' testimony and Claimant's own admissions constitute substantial evidence to support them. Board's Br. at 7-11. The Board explains that it credited Employer's witnesses' testimony over Claimant's, as it was empowered to do. *Id*. at 9. The Board also notes that, at the UC hearing, Claimant did not object to the alleged hearsay evidence, and, therefore, his arguments in that regard are waived. *Id.* at 9-10. Alternatively, to the extent inadmissible hearsay evidence was presented by Employer's witnesses at the hearing, the Board contends that such hearsay evidence was corroborated by Claimant's own admissions, thus making Employer's Manager's (Mr. Cifelli's) hearsay testimony admissible to support the Board's findings. *Id*. at 10-12. As such, the Board maintains that its findings are in fact supported by substantial evidence of record. Regarding willful misconduct, the Board argues that Claimant's failure to notify Employer that he was leaving the worksite without completing the installation, in violation of Employer's work rule of which Claimant was aware, and leaving work early without permission, constituted willful misconduct. *Id.* at 16.

Regarding Claimant's assertion that he was denied a full and fair hearing, the Board points out that Claimant was provided a hearing notice that

8

informed him of the issues to be considered on appeal and explained how to submit evidence that would assist in developing his case, yet he chose not to submit any phone records into evidence. *Id*. at 12-13. The Board further points out that the referee repeatedly questioned Claimant concerning the alleged text message and phone evidence in an attempt to assist Claimant with developing his evidence. *Id.* at 13-14. Additionally, the Board argues that despite that the hearing was held telephonically, the referee was still able to assess witness credibility. *Id.* at 16. Further, Claimant did not object to the telephone hearing or request an in-person hearing, and Claimant has otherwise failed to provide any evidence that he was denied a full and fair hearing. *Id.* at 16. Concerning Claimant's allegation that the Board abused its discretion by denying Claimant's request for a remand hearing, the Board argues that it has the discretion to decide whether to grant a request for a remand, and, because Claimant had the opportunity to submit evidence prior to the hearing but chose not to, the Board did not abuse its discretion in not granting Claimant's request. *Id.* at 14-15. As to Claimant's challenge to Employer's reason for his termination, the Board observes that Employer has consistently cited Claimant's conduct on January 10, 2020, as the reason for his discharge. *Id.* at 19. Accordingly, the Board contends that it did not err in denying Claimant UC benefits.

Section 402(e) of the Law provides that a claimant is ineligible for UC benefits when "his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . . ." 43 P.S. § 802(e). "Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court." *Gordon Terminal Serv. Co. v. Unemployment Comp. Bd. of Rev.*, 211 A.3d 893, 898 (Pa. Cmwlth. 2019). In UC cases, the employer bears the burden of demonstrating that the claimant's

unemployment is due to willful misconduct. *Walsh v. Unemployment Comp. Bd. of Rev.*, 943 A.2d 363, 368 (Pa. Cmwlth. 2008). The Law does not define the term "willful misconduct"; however, our Supreme Court defined that term in *Caterpillar, Inc. v. Unemployment Compensation. Board of Review.*, 703 A.2d 452, 456 (Pa. 1997), as (1) "wanton or willful disregard for an employer's interests;" (2) "deliberate violation of an employer's rules;" (3) "disregard for standards of behavior which an employer can rightfully expect of an employee;" or (4) "negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations." In a case involving a work rule violation, the employer must establish the existence of the work rule, the reasonableness of the rule, the claimant's knowledge of the rule, and its violation. *Bishop Leonard Reg'l Cath. Sch. v. Unemployment Comp. Bd. of Rev.*, 593 A.2d 28, 31 (Pa. Cmwlth. 1991). Once the employer proves the above, the burden of proof shifts to the claimant to prove that he had good cause for his actions. *Owens v. Unemployment Comp. Bd. of Rev.*, 748 A.2d 794, 798 (Pa. Cmwlth. 2000). It is also well settled that leaving work early without permission constitutes willful misconduct unless the employee demonstrates good cause. *Simmons v. Unemployment Comp. Bd. of Rev.*, 429 A.2d 121, 122-23 (Pa. Cmwlth. 1981).

We first address Claimant's argument that the Board erred in finding Claimant violated Employer's work rule on January 10, 2020, and thus, committed willful misconduct. Claimant does not dispute the existence of Employer's work rule, which the Board found requires "employees to call their supervisor prior to leaving a worksite without completing an installation[,]" the rule's reasonableness, or his awareness of the work rule. C.R., Item No. 19. Rather, Claimant appears to dispute only whether he violated the rule. In this regard, Claimant essentially

10

contends that the Board should have credited his testimony that he appeared at the job site, but the customer refused to allow him to perform the work, and that he stopped for a short period to eat lunch in his vehicle after leaving the worksite and did not return home before returning to the shop, as opposed to Employer's contrary testimony that Claimant asserts is based solely on uncorroborated hearsay and, thus, does not constitute substantial evidence. Claimant's Br. at 9-10. Claimant essentially asks this Court to overturn the Board's credibility determinations and accept his preferred version of events, which we decline to do.

It is well established that the Board is the ultimate factfinder in UC cases and is empowered to make its own determinations as to witness credibility and evidentiary weight, as well as to resolve conflicts in the evidence. *Peak v. Unemployment Comp. Bd. of Rev.*, 501 A.2d 1383, 1386 (Pa. 1985); *DeRiggi v. Unemployment Comp. Bd. of Rev.*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). The Board's findings are binding on appeal if they are supported by substantial evidence, which has been defined as "such relevant evidence which a reasonable mind would accept as adequate to support a conclusion." *Guthrie v. Unemployment Comp. Bd. of Rev.*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). Moreover, we must view the record in the light most favorable to the party prevailing before the Board – here, Employer – and afford that party the benefit of all reasonable inferences that can be drawn from the evidence to determine if substantial evidence exists. *Curran v. Unemployment Comp. Bd. of Rev.*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000).

Here, the Board resolved the conflicts in the evidence in favor of Employer and, in doing so, credited the testimony of Employer that Claimant failed to contact his supervisor prior to leaving the worksite and before clocking out early for the day on January 10, 2020. While Claimant adheres to his testimony that he

appeared at the job site, but the customer refused to allow him to perform the work, and that he stopped to eat lunch in his vehicle after leaving the worksite and did not return home, the Board did not credit this testimony and instead found that Claimant failed to contact Employer and left work early without permission, resulting in his termination. Claimant's attempt to show that the Board erred in so finding, by merely pointing to contrary evidence in the record, is insufficient to show that a finding is not supported by substantial evidence. *Serrano v. Unemployment Comp. Bd. of Rev.*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016) (*citing Verizon Pa. Inc. v. Workers' Comp. Appeal Bd. (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015)). As stated above, "[q]uestions of credibility . . . are within the sound discretion of the Board and are not subject to re-evaluation on judicial review." *Serrano*, 149 A.3d at 439 (citing *Peak*, 501 A.2d at 1388). As such, we cannot agree that the Board's findings in this regard are not supported by substantial evidence.

Claimant also argues that the Board's findings are not supported by substantial evidence because they were based on Employer's witnesses' testimony about Claimant's conduct on January 10, 2020, and the GPS data, which Claimant asserts was based on uncorroborated, and thus inadmissible, hearsay. However, because he failed to lodge a hearsay objection before the referee or the Board, we cannot agree with Claimant's assertion in this regard. Moreover, specifically as to the GPS data and Claimant's foundational challenge thereto, we note that our decision in *UGI Utilities, Inc. v. Unemployment Compensation Board of Review*, 851 A.2d 240, 251 (Pa. Cmwlth. 2004), requires that any claim that a foundation is inadequate be raised and preserved by the litigant at the hearing at the point in the hearing when the evidence's admissibility is under consideration. *See also Crabbe v. Unemployment Comp. Bd. of Rev.*, 179 A.3d 1183, 1189 (Pa. Cmwlth. 2018)

12

(holding issues not raised in claimant's appeal to Board are waived for purposes of appellate review). As noted above, Claimant did not specifically object to Employer's witnesses' testimony regarding Claimant's conduct on January 10, 2020, or the purported GPS data, and, as such, Claimant waived any objection based on hearsay.

Even if Claimant had not waived his hearsay objections, we would nevertheless find them to be without merit. We acknowledge that hearsay evidence, properly objected to, is not competent evidence to support the Board's findings; however, hearsay evidence that is admitted without objection will be given its natural and probative effect and may support the Board's findings if it is corroborated by other competent evidence in the record. *Walker*, 367 A.2d at 370. A finding based solely on hearsay cannot stand. *Id.* Again, Claimant himself testified that he left the worksite without having completed the job and without having spoken to his supervisor, which corroborates the alleged hearsay evidence in this case. N.T. at 14-16. Furthermore, while the GPS data that Claimant went home for 1 hour and 20 minutes may not have been adequate on its own, Claimant again corroborated this evidence by his own testimony. As such, the Board's findings in this regard are supported by substantial evidence of record.

With regard to Claimant's challenge to the Board's finding (F.F. No. 8), *see* Claimant's Br. at 10-11, concerning the reason for his termination, we note that Claimant did not raise this issue in his appeal to the Board. *See* C.R., Item Nos. 14-15. Accordingly, we conclude that Claimant waived this issue. *See Crabbe*, 179 A.3d at 1189. Even if Claimant had not waived the issue, we would conclude that substantial evidence exists to support the Board's finding regarding the reason for Claimant's termination based on the Board's credibility determinations. Mr.

13

Cifelli testified that the main reason for terminating Claimant was Claimant's actions on January 10, 2020. N.T. at 8-10. Accordingly, based on the facts as found by the Board, we conclude that substantial evidence of record exists to support the Board's findings that Claimant left the worksite without contacting his supervisor and clocked out early on January 10, 2020, which constituted willful misconduct and resulted in his termination.[4]

We next consider Claimant's argument that he did not receive a full and fair hearing in this matter, which we construe as one implicating due process concerns. "The essential elements of due process are notice and an opportunity to be heard in a full and fair hearing before an impartial decision maker." *Leone v. Unemployment Comp. Bd. of Rev.*, 885 A.2d 76, 80 (Pa. Cmwlth. 2005). With regard to the conduct of UC hearings, Section 101.21(a) and (b) of the Board's regulations states, in relevant part:

> (a) In a hearing the tribunal may examine the parties and their witnesses. Where a party is not represented by counsel[,] the tribunal before whom the hearing is being held should advise him as to his rights, aid him in examining and cross-examining witnesses, and give him every assistance compatible with the impartial discharge of its official duties.

> (b) The tribunal shall determine the order in which the evidence shall be presented in hearings. Within the discretion of the tribunal, the parties shall be permitted to present evidence and testimony which they believe is necessary to establish their rights.

34 Pa. Code § 101.21(a), (b). Although UC "referees are not imbued with the same powers as a trial court, [ ] they are nevertheless authorized to regulate the course of hearings and to take other action necessary or appropriate to the discharge of the

---

[4] *See Holt v. Unemployment Comp. Bd. of Rev.*, 840 A.2d 1071, 1073 (Pa. Cmwlth. 2004) (holding that testimony may be substantial evidence to support a finding).

duties vested in them." *Powell v. Unemployment Comp. Bd. of Rev.*, 157 A.3d 884, 893 n.11 (Pa. 2017) (citing 1 Pa. Code § 35.187(1), (10)).

While we appreciate that the UC appeals process can be challenging, especially for *pro se* litigants, our review of the record and hearing transcript reveals that Claimant was afforded the opportunity to present his testimony and additional evidence at the UC hearing, and was permitted to ask questions of Employer's witnesses. At the beginning of the hearing, the referee asked all of the parties if they received the hearing notice explaining their rights, to which Claimant answered that he did. N.T. at 3-5. The referee then explained those rights and asked Claimant if he had any questions as to those rights, and Claimant responded that he did not. *Id.* Within the hearing notice, there was both information about having a right to an attorney and the requirement that parties submit evidence to support their case five days in advance of the hearing. C.R., Item No. 11. The referee asked probing questions of all of the parties and allowed all parties an opportunity to answer at length. Claimant presented his own testimony and was given the opportunity to question Employer's witnesses at the hearing and submit evidence, but he failed to submit any documentary evidence of alleged telephone records prior to the hearing. When asked several times why he did not submit those records as evidence prior to the hearing, Claimant could not provide an answer. Claimant has thus failed to establish that he was prejudiced or that the referee's conduct prevented him from receiving a full and fair hearing. *Leone*, 885 A.2d at 80. To the contrary, in this case, Claimant had ample opportunity to present testimony, to submit evidence on his own behalf, and to question Employer's witnesses on matters relevant to the issues before the referee. Thus, we conclude that Claimant received all the due process to which he was entitled.

15

Finally, we agree with the Board that its denial of Claimant's request for a remand hearing was not an abuse of discretion. Section 504 of the Law provides that the Board has the discretion to decide whether to grant a request for remand. 43 P.S. § 824. Therefore, a decision denying a request for remand will not be reversed absent an abuse of discretion. However, a remand hearing is generally granted to allow a party the opportunity to present evidence not offered at the original hearing because it was not then available. *Fisher v. Unemployment Comp. Bd. of Rev.*, 696 A.2d 895, 897 (Pa. Cmwlth. 1997) (citing *Flores v. Unemployment Comp. Bd. of Rev.*, 686 A.2d 66, 75 (Pa. Cmwlth. 1996)).

The Board denied Claimant's request for a remand hearing because he had an opportunity to present phone and text message evidence of his contacts with Employer at the original hearing before the referee, but Claimant chose not to submit such evidence. In his petition for appeal from the Department of Labor & Industry's UC determination, Claimant alleged that he texted Employer, but he did not offer the texts, or the phone logs, into evidence prior to the referee hearing according to the instructions on the hearing notice. C.R., Item Nos. 8, 11. Claimant testified that he exchanged text messages with Employer's Manager about the garage door installation and about Claimant leaving the job early, but, in Claimant's answers to the referee's questions, he testified that he did not offer them into evidence because he did not think it was necessary. N.T. at 18-20. Moreover, Claimant did not testify that the text messages or the telephone service provider logs were unavailable. Thus, the Board's denial of Claimant's request for a remand hearing was not an abuse of its discretion.

16

### III. Conclusion

For the foregoing reasons, we conclude that Employer met its burden of demonstrating that Claimant was discharged for willful misconduct and, consequently, that Claimant is ineligible for UC benefits under Section 402(e) of the Law. Accordingly, we affirm the Board's order.

_____
J. ANDREW CROMPTON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Abubakarr Nabay,               :
          Petitioner    :
                          :
      v.                :  No.  881 C.D. 2020
                          :
Unemployment Compensation  :
Board of Review,            :
         Respondent :

# **O R D E R**

**AND NOW**, this 30th day of December 2021, the order of the Unemployment Compensation Board of Review, dated August 12, 2020, is hereby AFFIRMED.

_____
J. ANDREW CROMPTON, Judge